McDole v. Purdy.

1. Vendor and vendee: LAND EXCHANGE: FRAUDULENT REPRESENTA-TIONS: CHARACTER OF RELIEF. M. was induced to exchange premises in this State, with P. and wife, for land in another State, by the representations of P., as to its character and value, which turned out to be false and were so known to be by P. when made. The title to

the land last mentioned was in P.'s wife, and that conveyed in the exchange, by M., was deeded to her also. The written guaranty containing the representations as to the quality of the land was signed by P. alone. *Held,*

1. That M. was entitled to recover as unpaid purchase-money for the premises conveyed by him to P.'s wife, an amount equal to the difference between what the land conveyed to him was actually worth at the time of the exchange, and what it would have been had it been as represented.

2. That M. was entitled to a vendor's lien for this amount, and a decree enforcing it against the premises which he, in the exchange, conveyed to P.'s wife.

3. That the fact, that the guaranty containing the representations as to the land, was signed by P. alone, while the title to all the land was in P.'s wife, who was cognizant of and reaped the benefit of the false representations made by her husband, did not affect M.'s right to the relief granted.

2. Practice: MISTAKE IN FORUM. Under our system of practice, a party is not to be denied relief, if thereto entitled, because he has addressed his petition to the wrong side of the court.

3. Vendor and vendee: LIEN: WAIVER OBTAINED BY FRAUD. In equity an unpaid vendor who has not waived his lien is entitled to have it enforced, and no waiver of the lien, obtained by fraud, will be effectual to destroy it.

## *Appeal from Jackson District Court.*

### WEDNESDAY, DECEMBER 4.

EVIDENCE: HANDWRITING: FRAUD: DEFRAUDED VENDOR ENTITLED TO LIEN IN EQUITY.—Plaintiff exchanged with defendants (husband and wife) certain property in Iowa, for certain property in Wisconsin, owned by the defendants, the title to which was in Eliza Purdy, wife of George Purdy.

The plaintiff claims that the defendants misrepresented the quality and character of the Wisconsin land (166 acres in Buffalo county, in that State), and that by reason of the fraud of the defendants in the representa-

tions as to the quality, situation, character and value of said land, *part of the purchase-money* of the property conveyed by plaintiff to the defendant Eliza, remains unpaid, viz., the sum of $1,670; and he prays that the same may be declared a vendor's lien on the tavern stand property in La Motte, Iowa, which the plaintiff conveyed to the said Eliza; and for general relief. The nature of the action, and of the issues, will further appear by the report of S. D. Lyman, Esq., referee, to whom the cause was referred. His report is as follows:

"That on the 30th day of July, A. D. 1861, the plaintiff was the owner of certain real property, a tavern stand in La Motte, Jackson county, Iowa, and also the W. ½ of S. E. of S. W. ¼, sec. 26, in T. 87, R. 3 east, and also a pew in the Baptist church at La Motte, and that the defendants, George Purdy and his wife, were owners of a house and lot in the village of Durand, and the N. W. ¼ of sec. 5, in T. 24, north R. 11, west 5 P. M., both in the State of Wisconsin; the title to which quarter section was in Eliza Purdy.

That on said day, said parties exchanged said property, together with some articles of personal property, the plaintiff executing to defendant, Eliza Purdy, a warranty deed of the real property, the tavern stand at La Motte, and the twenty acre lot, and also conveyed the pew to said George Purdy, and also as part of the consideration, plaintiff delivered to defendants, some articles of personal property.

That plaintiff also received from defendants at the same time an order in words as follows: "To the man that cut the hay on my land in Buffalo county, Wisconsin, let Mr. McDole have the hay that is on the place, and oblige yours, George Purdy," and also received an order on one Gregory for $12.

That defendants executed at the same time, conveyances of their Wisconsin property aforesaid, the Durand house and lot, and the quarter section in Buffalo county, to the plaintiff or to his wife, by warranty deeds.

That the plaintiff was unacquainted with the said property of defendants in Wisconsin, that he had never seen it and knew very little, if any thing more about it than what defendant, George Purdy, told him, and that the negotiations for the trade were in progress three or four weeks before the contracts were closed and the deeds made.

That plaintiff was induced to the exchange principally by the representations of defendant, George Purdy, as to the character and quality of the land.

That Eliza Purdy, defendant, and Lusina McDole, wife of plaintiff, were both parties in the negotiations, and that Eliza Purdy knew that her husband was making statements and representations to plaintiff as to the character and quality of the land in Wisconsin. He was the active person in effecting the exchange.

The plaintiff alleges that the representations thus made were false and fraudulent, that the Buffalo county land was greatly different from, and inferior to the representations ; and by his pleading as finally amended he alleges that " the representations were reduced to writing by said George Purdy at the time of said conveyance of the property," and he alleges the writing to be in words as follows, viz.: La Motte, July 30, 1861, " I, for value received, sell the land described in deed, good, to have timber as good as can be, and about twenty-five acres of meadow on it, the rest good plow land and no sand on the whole place, George Purdy," which alleged writing is in the evidence marked Exhibit " H."

The referee finds, as a matter of law, that the plaintiff must recover on this alleged written representation, or not at all.

The defendant, George Purdy, denies on his oath, by pleading filed, the execution of the alleged writing, and alleges a writing materially different.

Upon such denial the referee finds, as a matter of law, that plaintiff must prove the execution of the writing.

There is a large amount of evidence relative to the writing, and it is very conflicting, and after a careful consideration of it, the referee finds that the execution of the alleged writing is not sustained by a preponderance of evidence.

The plaintiff also alleges that he received from defendants, as part consideration for the tavern property, the order for the hay and the $12 order on Gregory ; that defendant made fraudulent representations as to these orders ; that they were worthless ; that the hay was estimated at about $60, and the $12 order at $12, and to that extent, together with the difference of the value of the Wisconsin land, between what it is and what it would be, if it was as represented, he has failed to receive payment for his property conveyed to defendants, and asks a vendor's lien for that amount on the tavern property conveyed to defendants.

The referee finds that the allegation that the hay and $12 order were part of the consideration in the exchange of the real property, is not sustained by the evidence.

Upon these findings, it becomes unnecessary to make any findings as to the truth of the representations, or as to the character and quality of the Wisconsin land, which, however, is clearly greatly inferior to the descriptions of Exhibit " H."

McDole v. Purdy.

The defendants make a cross demand against the plaintiff, and allege fraudulent representations made by plaintiff as to the value of the tavern property at La Motte, on which he relied, and which induced him to the exchange, and alleges injury to the amount of $1,000. Defendant also alleges breach of warranty in the plaintiff's deed of said tavern stand, and that there were taxes unpaid, which he has been obliged to pay.

The referee finds, that the allegations of defendants, as to the fraudulent representations of plaintiff, and his injury thereby, are not sustained by the evidence.

In relation to the alleged breach of warranty growing out of the unpaid taxes, the only evidence is the statement of the commissioner, Keck, that "defendant introduced the record of the clerk of the District Court of Jackson county, Iowa, of sales for taxes in 1861, by which it appears that the tavern stand at La Motte, assessed to J. T. McDole, was sold December 2, 1861, to F. Scarborough, for $14.75, and was redeemed by George Purdy, January 9, 1863, for the sum of $21.38, not including the certificate of redemption."

The referee regards the statement of the commissioner as insufficient proof.

Upon the alleged cause of action of the plaintiff against the defendants, the referee finds in favor of the defendants, and, in regard to the cross demands and claims of defendants against the plaintiff, the referee finds for the plaintiff. All of which is respectfully submitted.

S. D. LYMAN, *Referee.*

From a decree confirming this report, and dismissing the petition, the plaintiff appeals.

*B. W. Poor* for the appellant.

*Booth & Graham* for the defendants.

DILLON, J. — This cause was very fully argued at bar, and the voluminous testimony has been carefully examined and considered. The result of this examination on the part of the court is that, with respect to the finding of facts, it concurs in the report of the referee, with one exception, but that exception is the vital question in the case.

1. VENDOR AND VENDEE: land exchange: fraudulent representations: character of relief.

VOL. XXIII.—36

Taking the whole evidence together, it is plain beyond reasonable controversy, that the defendant, George Purdy, acting for himself and wife, and with the knowledge of the wife, misrepresented in material respects, the quality and character of the Wisconsin land.

It is not disputed that the defendants were acquainted with the real character of this land. And it cannot well be made a question that the defendants' representation of the character and value of the Wisconsin land were relied upon by the plaintiff, and were operative with him in obtaining his consent to make the exchange.

While there is some conflict of testimony on the point, yet upon the whole evidence it very satisfactorily appears that the Wisconsin land fell far short of what it was represented to be, and that the plaintiff was grossly deceived with respect thereto.

If the plaintiff's case had not been made to rest wholly upon the alleged written guarantee of July 30, 1861, (referred to in the report of the referee above) its decision would have been attended with no difficulty whatever.

But the plaintiff, in the pleadings, staked his whole case upon the genuineness of this disputed writing; and on this issue the referee found for the defendants.

We have deemed it our duty, attentively to consider the large mass of testimony on this point, but do not deem it profitable to incumber the reports with an extended review and discussion of it.

It is our opinion that the evidence establishes, with reasonable certainty, that the disputed paper was executed by the defendant, George Purdy.

We state, without elaboration, some of the reasons upon which this opinion rests.

1. The *intrinsic* evidence. This, on the whole, favors the view we take. The general character of the writing strongly resembles Purdy's. The experts, as usual, differ,

McDole v. Purdy.

but if *weight* can be predicated of their testimony, it is in favor (considering the character and experience of the witnesses) of the plaintiff.

2. The *extrinsic* evidence. This clearly preponderates in the plaintiff's favor.

*a.* Thus, defendants admit that a written statement of the quality of the Wisconsin land was agreed to be made, of the same general character with the one in controversy. They admit that such a writing was made, but deny that the one produced by the plaintiff is the one actually executed.

*b.* Three genuine instruments were executed on the night of the trade, July 30th, viz.: the order for the hay, the order on Gregory, and the memorandum as to the furniture. That all of these are in the handwriting of Purdy, is admitted by him, and shown by the whole evidence. Now, the disputed instrument is upon paper (narrow note paper) precisely like the admitted instruments, and bears the same general appearance.

*c.* Again, it is worthy of notice, although not of controlling significance, that Purdy does not, *in express terms*, deny that the body of the disputed paper is in his handwriting, but denies that his genuine signature is attached thereto. It is plain that the person who wrote the body wrote also the signature.

*d.* Plaintiff and his wife positively and clearly fix and identify the disputed paper to be the *very one* which Purdy delivered to them on the evening the trade was concluded. If this is not so, they are both guilty of perjury, and, at least, one of them of forgery also. On the other hand, defendants' witnesses, with *perhaps* the exception of Purdy himself, base their opinion against the genuineness of the disputed paper, mainly if not wholly upon their recollection of its contents.

When it is remembered how very closely the instrument

produced by the plaintiff corresponds with the one which
Purdy says he executed, no conclusive weight should be
attached to evidence which impeaches an instrument
solely upon recollection, long afterward, of its *exact* phra
seology. The human memory unassisted by memoranda,
is too treacherous to be thus implicitly trusted. Defend-
ants' witnesses may be mistaken as to the instrument,
without any crime, much less two crimes being imputed
to any of them.

In our judgment, the plaintiff has established his right
to a recovery from the defendants, for the difference be-
tween what the Wisconsin land was actually worth in
1861, and what it would have been worth had it been as
represented.

Viewing the whole testimony on this point, and
averaging the different values given, we find this differ-
ence to be two dollars per acre, or $332 in all. Against
whom should this recovery be had? Defendants' counsel
deny that there can be any recovery against Mrs. Purdy,
inasmuch as the instrument was signed by Purdy alone.
Certain it is, that she was cognizant of the representa-
tions made by her husband, and has reaped and still
retains the benefits of them. This cause is in equity,
and in that court there is no difficulty in rendering a
proper judgment or decree.

And this brings us to the question whether the plaintiff
has any remedy in equity. Under our present system
2. PRACTICE: plaintiff is not to be denied relief, if thereto
mistake in
forum. entitled, because he has addressed his petition
to the wrong side of the court. Besides, we think the
plaintiff in his petition and by the testimony makes a
case properly cognizable in equity. He seeks a vendor's
lien and general relief.

His ground for such a lien is, that he has not been fully
paid for the property he sold. He supposed he was paid,

but he was not. Had the Wisconsin lands been as represented, the plaintiff would have been fully paid; but they were not. They were worth, as above found, $332 less than they would have been had they conformed to the representations made concerning them. Viewed in its substance and essence, it is clear, that to this extent, viz., $332, the plaintiff has not been paid for the property conveyed to Mrs. Purdy.

It is just the same as if he had been paid this amount in counterfeit or worthless bills. There would be a semblance of payment, but none in reality; and if none in reality, then none in equity.

And in equity, an unpaid vendor who has not waived it, will be entitled to a lien, and no waiver obtained by fraud will be effectual to destroy the lien.

3. VENDOR AND VENDEE: lien: waiver obtained by fraud.

Therefore, we are of opinion, that for the $332, with six per cent interest from July 30th, 1861, the plaintiff is entitled to a vendor's lien upon the tavern and lot in La Motte, conveyed to Mrs. Purdy. That equity will, in such a case as the present, enforce a vendor's lien, see *Bradley* v. *Bosley*, 1 Barb. Ch. 125.

The decree dismissing petition is reversed, and the cause remanded to the District Court, with directions to enter a decree in plaintiff's favor for the above sum, with interest, against George Purdy, and to make the same a lien as against both defendants upon the house and lot in La Motte conveyed by plaintiff to Mrs. Purdy.

Reversed and remanded.