[Filed December 7, 1886.]

## LIZZIE GEE v. SARAH McMILLAN ET AL.

VENDOR AND VENDEE—VENDOR'S LIEN.—Where a contract for the sale of land was, that the purchasers should give the vendor in payment therefor a good, negotiable, bankable promissory note, to be signed by persons of sufficient responsibility to enable the vendor to cash the same; and afterwards said purchasers procured the conveyance of said lands to be made to their wives, and thereupon made and tendered their own note, which was worthless, in performance of said contract : *held*, that a lien upon the land existed in favor of the vendor for the purchase price.

SAME—PURCHASE PRICE.—Where one sells property to another, and conveys the same by deed, a lien arises in equity in favor of the grantor for the purchase money, or for such part thereof as remains unpaid.

MULTNOMAH COUNTY. Defendants appeal. Affirmed.

*P. L. Willis,* for Appellants.

The respondent could not have had the right commonly called a vendor's lien, because she had not the legal title, which is necessary to such condition. (1 Ldg. Cases in Eq. 372.) The right she is seeking to have decreed her is a grantor's lien. It is not a lien until a complaint has been filed to assert it, and the court acts thereon. (1 Ldg. Cases in Eq. 373.)

A right to a grantor's lien does not exist in this state, and if it has heretofore existed, it should be rejected. (*Mackreth* v. *Symmons*, 15 Ves. 329.) The doctrine is opposed to the prevailing policy of this country, which discourages secret liens and latent equities, and tends to make all matters of title the subject of record evidence. (*Bayley* v. *Greenleaf*, 7 Wheat. 51; *Conover* v. *Warren*, 1 Gilm. 502; 1 Lead. Cas. Eq., 3 Am. ed., 375.) The doctrine has been rejected by the courts of the following named states, to wit: Kansas—*Simpson* v. *Mundee*, 3 Kansas, 172; Maine—*Philbrook* v. *Delano*, 29 Me. 410; Massachusetts—*Ahrend* v. *Adiorne*, 118 Mass. 216; Nebraska—*Edminster* v. *Higgins*, 6 Neb. 265; Pennsylvania—*Kauffelt* v. *Bower*, 7 S. & R. 64; and South Carolina—*Wragg* v. *Comptroller*, 2 Desauss. 509. In North Carolina it was sustained by the earlier cases, but afterwards rejected. (*McGahee* v. *Sneed*, 1 Dev. & Bat. Eq. 333; *Cameron* v. *Mason*, 7 Ired. Eq. 180; *Mast* v. *Raper*, 81 N. C. 330.) The courts have not adopted it in Connecticut—*Chapman* v. *Beardsley*, 31 Conn. 115; New Hampshire—*Arlin* v. *Brown*, 44 N. H. 102; Rhode Island—*Perry* v. *Grant*, 10 R. I. 334.)

The claim in any case must be definite and certain. (*Conover* v. *Warren*, 1 Gilm. 502.) In this case the respondent had a contract only with Mays, the owner of the legal title; hence he was the grantor, and if any right to a lien existed it was in his favor. He has not assigned it, and could not have done so, as it is not assignable. (*Webb* v. *Robinson*, 14 Ga. 216; *Brush* v. *Kinsley*, 14 Ohio, 20 and 437; *Gann* v. *Chester*, 5 Yerger, 205; *Green* v. *Cockett*, 2 Dev. & Bat. Eq. [N. C.] 390; *Watson* v. *Bane*, 7 Md. 117; *Roberts* v. *Rose*, 2 Humphreys, 145.) A complaint for a grantor's lien must show that the complainant has exhausted his remedy at law against the personal estate of the grantee, or that the complainant cannot have a full, complete and adequate remedy at law. (Oregon Code, § 376; *Eyler* v. *Crabb*, 2 Md. 137; *Dawson* v. *Coffey*, 12 Or. 518.) The acceptance by the vendor of the personal responsibility for the payment of any one other than the grantee destroys the grantor's right to a lien. (*Boynton* v. *Champlin*, 42 Ill. 65;

*Brown* v. *Gilman*, 4 Wheaton, 291 ; *Dudley* v. *Matlock*, 14 N. J. Eq. 253.)

*M. C. George* and *O. P. Mason*, for Respondents.

If plaintiff should be regarded by the court as the owner and vendor of an interest in the land of the value of $1,250, and took this note for the purchase money, the lien is good, and has not been waived. (*Truebody* v. *Jacobson*, 2 Cal. 269 ; *Walker* v. *Sedgwick*, 8 Cal. 398 ; *Baum* v. *Grigsby*, 21 Cal. 172.) If B. F. Mays should be regarded as the owner of the land, then he was the vendor. The fact of his receiving the note, and giving it to his daughter, would carry the lien into his daughter's hands. · (*Sloan* v. *Campbell*, 71 Mo. 387 ; S. C., 36 Am. Rep. 493 ; *Willis* v. *Gay*, 26 Am. Rep. 328 ; *Fonda* v. *Jones*, 2 Am. Rep. 328.) Concerning such lien in this state, see *Pease* v. *Kelly*, 3 Or. 417; *Kelly* v. *Ruble*, 11 Or. 116 ; *Coos Bay Wagon R. Co.* v. *Crocker*, 6 Sawy. 574. Where fraud is committed, the vendor will not lose his lien. (*Maddern* v. *Barnes*, 45 Wis. 135; S. C., 30 Am. Rep. 703 ; *Coos Bay Wagon Road* v. *Crocker, supra.*)

STRAHAN, J.—The object of this suit is to enforce a grantor's lien upon certain real property situate in Multnomah County. The material parts of the complaint are as follows : That the defendant Sarah McMillan is the wife of the defendant R. H. McMillan, and the defendant Mary Haugg is the wife of the defendant N. Haugg ; that on the 18th day of December, 1885, the plaintiff was the owner of an undivided interest in and to the said property described in the complaint, and was also the owner of an undivided interest in and to certain personal property in the complaint described, and that the legal title to said land and personal property was in B. F. Mays, who held the interest owned by plaintiff for her ; that plaintiff is the wife of D. L. Gee, and that said property was her sole, separate, equitable estate ; that on or about December 19, 1885, the defendants R. H. McMillan and N. Haugg, and the said D. L. Gee and B. F. Mays, entered into a con-

tract to sell all of said property to R. H. McMillan and N. Haugg ; and that the defendants last named then and there agreed to and with the said D. L. Gee and B. F. Mays to purchase said property, and to pay therefor as follows : To pay to D. L. Gee and B. F. Mays $1,000, including the payment of a certain chattel mortgage, which was a lien upon a part of said personal property, in the sum of $150.00, and to turn over to said D. L. Gee a butcher shop and business estimated at $250.00, and to make, execute and deliver to the plaintiff a good, negotiable, bankable promissory note for the sum of $1,250, to be signed by persons of sufficient responsibility so as to enable plaintiff to cash the same, and that they would take said land subject to a certain mortgage thereon for $2,-200 ; that pursuant to said agreement, and at the request of said defendants R. H. McMillan and N. Haugg, said Mays executed a deed to said real property to the defendants Sarah McMillan and Mary Haugg, who now hold the title to said property ; that said defendants last named have paid nothing whatever for said property ; and that R. H. McMillan and N. Haugg caused and procured the conveyance of all of said property to their said wives, Sarah McMillan and Mary Haugg, for the purpose and with the intent to defraud and cheat the plaintiff out of all his interest in said property ; that the defendants R. H. McMillan and N. Haugg failed to execute to plaintiff such bankable note as they had agreed to do, but fraudulently and falsely, and with the intent to cheat and defraud the plaintiff out of the said $1,250, made and executed a certain promissory note themselves, wherein they promised to pay to the order of Lizzie Gee, this plaintiff, the sum of $1,250 ; that said note was sent to the plaintiff through the mail, and was not received by her in payment of anything ; that said R. H. McMillan and N. Haugg are now, and were at the time said note was made, wholly insolvent ; and that said note is wholly worthless, and was made, executed and sent to the plaintiff with the intent to defraud and cheat her out of said property ; that at the time the defendants Sarah McMillan and Mary Haugg received said deed, they knew all the foregoing

facts; that no part of said note has been paid, and that the same is overdue.

The defendants answered together, and denied the material allegations of the complaint, except that it is admitted that said property was conveyed to the defendants Sarah McMillan and Mary Haugg. The cause was referred for the purpose of taking the evidence, and the same was taken in writing and accompanies the transcript. The trial in the court below resulted in a decree in favor of the plaintiff, enforcing a grantor's lien against the real property described in the complaint; from which decree the defendants Sarah McMillan and Mary Haugg have appealed to this court. There are, therefore, but two questions presented for our examination, namely: (1) Does the evidence prove to the satisfaction of the court the material allegations made by the plaintiff? and (2) Are those allegations, if true, sufficient in law to entitle the plaintiff to the relief which she prays?

I will now examine these questions in their order: and first, as to the question of fact. Lizzie Gee, D. L. Gee, B. F. Mays and Robert Gee were examined as witnesses on the part of the plaintiff, and it is sufficient to say that their evidence satisfies me of the truth of all the material allegations in the complaint. The facts disclosed leave no doubt in my mind as to the intent on the part of R. H. McMillan and N. Haugg to overreach and defraud the plaintiff, and to obtain her interest in said real property without paying the $1,250 represented by said note. No extended discussion of the facts is necessary. They do not seem to be seriously controverted by the defendants, who offered no evidence or explanation whatever touching their conduct in this transaction. Under these circumstances we are justified in drawing the strongest and most favorable inferences from the evidence given on the part of the plaintiff that the facts will authorize. The defendants had the opportunity of contradicting this evidence, so damaging in its character; and having failed to do so, we must give it effect according to its fullest scope and meaning. We, therefore, adopt the findings of fact made by the learned circuit judge as the findings of this court.

The questions of law are more difficult.  The complaint appears to have been drawn to meet one of two alternative views of the law; that is, either to enforce a grantor's lien on the real property described, or, if that cannot be done, then to annul such transaction for fraud.  At least, both views were insisted upon on this argument.  But the complaint does not contain facts sufficient to authorize a rescission of the contract.  The fraud is perhaps sufficiently alleged and proven, but that is not enough.  If the transaction is to be rescinded, all parties must be restored to the same situation they were in, substantially, at the time the deed was executed.  This would require that the plaintiff should tender back to the defendants all that they parted with on the faith of the agreement ; or, at least, offer in her complaint to make restitution.  It is manifest that this transaction cannot be rescinded under the facts alleged.  Mr. Mays received a part of the consideration from the defendants, and he is not even a party to this suit, and it does not appear whether he desires a rescission or not.

But the other question is the one mainly relied upon, and, it must be admitted, presents the greatest difficulty.  The contention of the plaintiff is that the note of $1,250 described in the complaint is for the residue of the purchase money for the real property which she conveyed to the two defendants Sarah McMillan and Mary Haugg, and that as against them she has a lien in equity for said purchase money.  In this case the property was conveyed to the grantees, and, therefore, according to some of the authorities, the lien, if it exists, is called a grantor's lien.  (3 Pomeroy Eq. Jur., Sec. 1249.) While other authorities equally as respectable seem to ignore this distinction, and to treat the lien as a vendor's lien, where the property has been conveyed; or else it is entirely disregarded.  (1 Lead. Cas. Eq., part 1, 481 ; 2 Story Eq. Jur., Secs. 1217, 1218.)  Whether the lien be treated as a vendor's lien or as a grantor's lien can make no difference in this case, as the result would be the same.  The principle contended for by the respondent is, that where one sells real property to another and conveys the same by deed, a lien arises in equity

XIV. OREG.—18.

in favor of the grantor for the purchase money, or for such part thereof as remains unpaid. I think this proposition rests on principles of equity too strong to be shaken or overthrown without legislative sanction. It is not important whether it will be accounted for as a trust, or as an equitable mortgage, or as arising from natural equity, or as having originated from any of the other causes or reasons stated by the writers on that subject: the result must be the same. In either event, it is a principle eminently promotive of justice between man and man, and in my opinion has the sanction of the ablest writers on jurisprudence, as well as the weight of judicial opinion, in its favor. (3 Pomeroy Eq. Jur., Secs. 1249, 1250 ; 1 Lead. Cas. Eq. 481 and notes; 2 Story Eq. Jur., *supra ;* and see 2 Sugden's Vendors, 671 and notes.)

Mr. Pomeroy's excellent treatise shows that the grantor's lien exists in the following states and territories : Alabama, Arkansas, California, Colorado, Dakota, District of Columbia, Florida, Illinois, Indiana, Iowa, Kentucky, Maryland, Michigan, Minnesota, Mississippi, Missouri, New Jersey, New York, Ohio, Oregon, Tennessee, Texas and Wisconsin. (Sec. 1249, *supra.*) The states of Connecticut, Delaware, Georgia, Kansas, Maine, Massachusetts, Nebraska, New Hampshire, North Carolina, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, and West Virginia do not recognize the doctrine. The Supreme Court of the United States recognizes and enforces the lien. Said the court: " When one person has got the estate of another, he ought not in conscience to be allowed to keep it without paying the consideration. It is on this principle that the courts of equity proceed as between vendor and vendee. The purchase money is treated as a lien on the land sold, where the vendor has taken no separate security." (*Chilton* v. *Braiden, Adm'r,* 2 Black. 458; *Peters* v. *Bowman,* 98 U. S. 56 ; *Thredgill* v. *Pintard,* 12 How. 24.)

The earliest case in this court where a vendor's lien is recognised is *Pease* v. *Kelly,* 3 Or. 417. The opinion is brief, and was delivered by Boise, J. Speaking of the lien for the unpaid purchase money, he said : " A mortgage is a more certain

and definite security than a vendor's lien. The lien exists if there is no higher security." In the brief of counsel for the appellant in that case, the very grounds upon which this lien appears to have been doubted in this state, in a case presently to be mentioned, were referred to, and must have been considered by the court. It is clear that the reasons there suggested did not prevail, and that the court would have enforced the lien if it had not been waived by the taking of a mortgage. It is difficult to understand how the vendor's lien could be waived by the taking of a mortgage if such lien never had any existence.

The case which seems to throw some doubt upon *Pease* v. *Kelly*, *supra*, is *Kelly* v. *Ruble et al.*, 11 Oregon, 75. There it is said: "As the respondent has failed to make out a sale, it becomes unnecessary to consider the case further. We have thus far impliedly admitted the existence of the equitable lien of the vendor of real estate for the unpaid purchase price. But we doubt the actual existence of the lien in this state. (*Ahrend* v. *Odiorne*, 118 Mass. 261; *Kauffelt* v. *Bower*, 7 S. & R. 64–76.) It is not believed the existence of such a lien was decided in *Pease* v. *Kelly*, 3 Or. 417; having reached the conclusion that no sale had been shown in the case before the court, no question could arise as to a lien for the purchase money." While this intimation by this court is entitled to very great respect and consideration, I do not think, under the facts of the case, it ought to be adopted as controlling authority. In *Coos Bay Wagon Road Co.* v. *Crocker*, 6 Saw. 574, the U. S. circuit court, district of Oregon, recognized and enforced a vendor's lien. And this court at the present term has recognized and applied the same principle. (*Burkhart* v. *Howard*, *ante*, p. 39.

It was suggested upon the argument that a grantor's lien did not exist in this case, for the reason that the note mentioned in the complaint was partly for the price of the land and partly for the price of the personal property. But we do not find that any part of the consideration for the personal property entered into said note. The court below found that

this note was given as a part of the purchase price for land, not personal property, and I think the finding was justified by the evidence. No stronger case could be presented, requiring the application of the equitable doctrine of grantor's lien for purchase money, than this. Here a most flagrant fraud appears to have been practised upon some confiding and unsuspicious people, manifestly requiring relief of some kind; and yet, unless it be administered through the application of the law of equitable lien for purchase money, it seems to me the wrong would have to go unredressed. Of course, the fraud practised in no manner affects the question of the lien. That exists independently of the fraud. But it does illustrate and make plain the real necessity there is for application of this principle in the practical administration of justice. Let a decree be entered in accordance with this opinion.

THAYER, J., concurring.—The question involved in this case depends very much upon the right of a grantor of real property by deed of absolute conveyance, to claim a lien upon the property for the unpaid purchase price thereof. In *Kelly* v. *Ruble et al.*, 11 Or. 75, this court expressed a doubt as to whether a vendor's lien, as it existed at common law, was in force in this state. It was not necessary to the decision of that case to determine the question, and hence no opinion upon it was declared, further than an intimation of its non-existence. But in a former case, *Pease* v. *Kelly*, 3 Or. 417, this court evidently considered that a lien of that character was in force, although it did not distinctly so determine.

It will not be contended, I presume, but that the common law of England, so far as applicable to the condition of the people, has been adopted in this state; nor be denied that the part thereof relating to vendor's lien was adopted with it, unless unfitted to the situation of the affairs of the community. A great amount of speculation has been indulged in as to the origin of such a lien. Mr. Pomeroy, in his work on Equity Jurisprudence, says "that it has been accounted for as a trust; as an equitable mortgage; arising from a natural equity, and as

a contrivance of the chancellors to evade the unjust rule of the early common law, by which land was free from the claims of simple contract debts." (Sec. 1250, Pom's Eq. Juris.) Chancellor Kent terms it an equitable mortgage, and says that " it will bind the vendee and his heirs, and volunteers, and all purchasers from the vendee, with notice of the vendor's equity; that *prima facie* the lien exists without any special agreement for that purpose; and it remains with the purchaser to show, that from the circumstances of the case, it results that the lien was not intended to be reserved, as by taking other security etc." (4 Kent's Com. *151, 152.) Judge Story says " that it attaches to the estate as a trust, equally, whether it be actually conveyed, or only be contracted to be conveyed." (Story Eq. Jur., Sec. 1218.)

In *Ahrend* v. *Odiorne*, 118 Mass. 261, Judge Gray, now of the Supreme Court of the United States, then chief justice of the Supreme Court of Massachusetts, concluded, after an elaborate examination of the question, that the foundation of the doctrine was, that justice required that the vendor should be enabled to charge the land in the hands of the vendee as security for the unpaid purchase money, and that the restriction of it to real estate suggested the inference that the court of chancery was induced to interpose, for the reason that real estate could not be attached on mesne process; nor, except in certain cases, and to a limited extent, be taken in execution for debt. The learned judge rejected the theory of natural equity, because that would apply to a sale of chattels, as well as of land; and the theory of a trust, as that would include too many other cases to which, confessedly, the doctrine had not been extended.

Mr. Pomeroy repudiates the idea of its being a trust, and thinks that the original and true ground of the lien arises out of the natural judicial conception, that upon the sale of anything on credit, the very identical thing sold should be regarded in some sort as a special fund out of which payment of the price was to be obtained, or at least secured; and that the seller should not be considered as parting absolutely with his

whole interest and dominion until the price is fully paid. (3 Pomeroy Eq. Jur., 256, Sec. 1250.) And in a foot-note to said section, that author concludes that the theory advanced by the Massachusetts courts as to the origin of the doctrine was imperfect and unsatisfactory ; that the absence of any power at common law to make the land liable for ordinary debts, instead of being the source of the grantor's lien, was itself only another instance and consequence of the same general superiority given to the ownership of the land ; both were incidents of one common mode of treating real estate, as compared with personalty. But he suggests the opinion that the original grounds and reasons for admitting the grantor's lien do not exist in our own country, and that the lien itself is not in harmony with our general real property law.

Judge Story, on the other hand, says, " that the principle upon which courts of equity have proceeded in establishing the lien in the nature of a trust is : that a person who has gotten the estate of another ought not, in conscience, as between them, be allowed to keep it, and not pay the full consideration money." (Story Eq. Jur., Sec. 1219.) And in the previous section the same author says : " It has often been objected that the creation of such a trust by courts of equity is in contravention of the statute of frauds. But whatever may be the original force of such an objection, the doctrine is now too firmly established to be shaken by any mere theoretical doubts." (Story Eq. Jur., Sec. 1218.)

The objection to the doctrine of vendor's liens is not to its application to estates contracted to be conveyed, but to the extension of it to estates actually conveyed. It seems to me that if the doctrine has no other foundation than to evade the rule of the common law exempting real property from the payment of simple contract debts, its adoption to the extent suggested is very questionable indeed ; as there never was a condition of affairs in this country that required such a remedy on account of any such circumstance as that. But if, on the other hand, it was founded upon the principle stated by Judge Story and suggested by Mr. Pomeroy, " that a person who has

gotten an estate of another ought not in conscience, as between them, to be allowed to keep it and not pay the full consideration money," then it was as applicable here as in Great Britain. That principle is eternal, and applicable to every country and every age.

I think the principle is a salutary one, and that it should be enforced in a proper case. Whether it is broad enough, however, to uphold a vendor's lien to the extent of raising a trust in favor of a grantor, who has conveyed by deed of absolute conveyance, so as to admit of the purchase price being made a charge upon the property conveyed, in an ordinary case of sale of real estate, I do not undertake to decide, as I do not regard the decision of that question as necessarily essential to the decision of the case under consideration. Here the conveyance was procured by the vendees to be made to their wives, appellants herein, upon an assurance that the vendees would execute to the respondent, in consideration of the conveyance of her interest in the land, good, approved, bankable notes; instead of which they merely gave their own note, which is uncollectible; and by reason of the conveyance having been so made, the respondent is not able to reach the property, so as to make it applicable to the payment of her debt by an ordinary proceeding at law. The transaction was fraudulent. Property obtained under such circumstances ought to be made chargeable with the consideration money, whether the law relating to vendors' liens as it existed at common law is in force or not. The appellants, through the false promise of the vendees, obtained the respondent's property, and they certainly ought not in conscience be allowed to keep it and not pay for it. That presents a case in which a court of equity would have an undoubted right to charge the property with the payment of the debt, irrespective of the other question referred to. Upon that ground I think the respondent is entitled to a lien upon the property for the payment of her debt. I therefore concur in the result reached in the opinion of Judge Strahan, herein.

Lord, C. J.—dissents.