FRED W. RHODES v. CHARLES M. ARTHUR.

(Filed October 12, 1907.)

(92 Pac. 244.)

**VENDOR AND VENDEE—Fraud of Vendee—Worthless Securities—Rights of Vendor.** A vendor of real estate, who sells at an agreed price and accepts real estate in satisfaction of a portion of the purchase price and is induced by the fraud of the vendee to accept a worthless note and mortgage in payment of the balance of the purchase money, may, upon discovering the fraud, return or tender back the note and mortgage and recover the unpaid purchase money and have a vendor's lien for the amount so recovered.

(Syllabus by the Court.)

*Error from the District Court of Pottawatomie County; before B. F. Burwell, Trial Judge.*

Affirmed.

*Blakeney & Maxey* and *J. W. Bartholomew*, for plaintiff in error.

*W. M. Engart* and *Cassidy & Cassidy*, for defendant in error.

Opinion of the court by

BURFORD, C. J.: The defendant in error, Charles M. Arthur, was the owner of a tract of land in Pottawatomie county, Oklahoma, which he sold to the plaintiff in error, Fred W. Rhodes, for the agreed price of $1,250, and took in payment therefor certain lots at the agreed price $600 and a certain note and mortgage held by Rhodes for the balance of the purchase money. This note was for the sum of $1,150, secured by a deed of trust executed by John Myers upon certain real estate in the state of Missouri, and upon which a payment of $500 had been made. This action is one by Arthur to recover the $650 balance of purchase money for the land by him conveyed to Rhodes, and to have a vendor's lien declared against said land. He alleges that he sold the land to Rhodes for the agreed price of $1,250, and received upon said purchase price the sum of $600, and conveyed the land to Rhodes. that, relying upon certain false and fraudulent representations of Rhodes as to the validity and value of the note and trust deed, he agreed to accept said note and trust deed for the balance of the purchase money, $650; that Rhodes represented to him that the maker of the trust deed was the owner of the land upon which it was executed, and had a right to give the same, that it was "gilt edge" and would be paid when due; that he had never seen the Missouri land; that he did not know Myers and was unable to find him, and that he relied upon the representations of Rhodes and accepted said note and trust deed believing the note good for the amount due thereon; that said representations were false; that Myers had no title to the Missouri land; that said trust deed was worthless and of no value; and that he believed Myers to be insolvent. He tendered back the note and trust deed, and demanded the $650, and, upon refusal, sued to recover the unpaid purchase money and to have the same declared a lien upon the land conveyed by him to Rhodes.

Rhodes filed his answer, in which he denied the allegations of fraud and false representations, but admitted "that the plaintiff

did on or about the 14th day of August, 1901, sell and convey to this defendant, Fred W. Rhodes, the land and premises described in paragraph one of said petition for the agreed price of twelve hundred dollars, and that in part payment of said consideration the defendant Rhodes endorsed, without recourse, and delivered to the plaintiff, a note and mortgage, on which there was a balance due of six hundred and fifty dollars, in payment of six hundred fifty dollars of said consideration, and that the balance, six hundred dollars, of which consideration defendant Rhodes conveyed to plaintiff property which said plaintiff took at an agreed price of $600."

These pleadings fix the character and status of the case. Persons are bound by the admissions set out in their pleadings, and, as a general rule, are concluded by them. The plaintiff avers that he sold Rhodes the land for a money consideration, and took lots in part pay, and accepted the note and trust deed at an agreed price of $650 for the balance. The defendant admits that he bought the land at an agreed price of $1,250; that he conveyed property in payment of $600 of the purchase money, and endorsed the note, without recourse, in payment of the remaining $650. Counsel for plaintiff in error have presented an elaborate and logical argument as to the theory of these pleadings, based both upon the pleadings and the testimony, and ask the court to determine whether this is an action to rescind a contract for fraud, or one to affirm the contract and recover damages for breach, and the law as to each of these classes of cases is correctly stated in their brief. But, in view of the issue specifically made by the pleadings, we are not called upon to enter into any extended discussion of theories. The case, in our judgment, falls within the exception stated in *Graham v. Moffett et al.*, 109 Mich. 303, 78 N. W. 132, which is cited in the brief of plaintiff in error, viz: "There is a class of cases, however, in which the vendor's lien does exist, viz., where the contract obligates the vendee to pay a given sum for the land, and the vendor is afterwards induced by fraud to

accept a chattel for the whole or a definitely fixed portion of such purchase price. In such a case, the vendee might tender back the chattel and endorse a lien for the amount represented by it. This is upon the theory that a pre-existing contract, its fraudulent modification being rescinded, the contract itself is left to stand, with its attendant right of lien in the vendor." And this doctrine is well supported by authority.

In 2 Warvelle on Vendors (2nd Ed.) sec. 692, it is said: "Upon the principle that the vendor has in all cases an equitable lien upon the estate sold for the unpaid purchase money as between himself and the vendee, unless there is either an express or implied agreement to waive such lien, it has been held that where, by the fraud of the vendee, a part of the price of the lands sold in fact remains unpaid, although the vendor supposed he had been paid in full, a lien may be asserted for such unpaid portion. Thus, if upon the sale of land the purchaser should pay part of the purchase money in lawful coin and part in worthless bills from which nothing could be obtained, the vendee fraudulently representing such bills to be good and collectible, the vendor would have a right to charge the land itself with that part of the purchase money which actually remained unpaid, as an equitable lien upon such land. So, also, if the vendor agrees to receive in part payment other lands, with the value of which he is unacquainted, and the vendee thereupon makes false representations as to the character, situation, and value of such land so to be given in exchange, whereby the vendor is induced to allow for the same a sum greatly beyond its value, he would be entitled to an equitable lien upon the land sold by him for the amount of the difference in value between the land taken in part payment as it really was and the value as it would have been had the vendee's representations been true. So, too, where a party sold land and received a part of the consideration in money and for the balance was induced to accept notes and mortgages which were worthless, and which the purchaser knew to be so at the time of the

sale, it was held that this constituted a fraud on the vendor, and did not defeat his lien for the purchase money, and this although the vendor, on discovering the worthless character of the notes and mortgages, returned them and received others in their place equally worthless, to the knowledge of the purchaser; as the practicing of a second fraud by the purchaser would not relieve him from the consequence of the former one perpetrated by him. And so generally, if the vendee in bad faith acquires the legal title, and by imposition or fraudulent artifices evades payment or pays or offers to pay in worthless commodities, or fraudulently substitutes a different medium of payment from that agreed upon, the vendor's lien will be preserved against the land in the hands of the vendee, a purchaser from him with notice, or a volunteer." As sustaining this rule, see *Gee v. McMillan,* 14 Ore 268, 12 Pac. 417; *Tobey v. McAllister,* 9 Wis. 463; *Brown v. Byam et al.,* 65 Iowa, 374; *Huff v. Olmstead,* 67 Iowa, 598; *Bokes v. Gilbert,* 93 Ind. 70; *Gilbert v. Bokes et al.,* 106 Ind. 558; *Fouch et al. v. Wilson,* 60 Ind. 64; *Williamson v. Worten* (Ind.) 31 N. E. 791; *Graham v. Moffett et al.* (Mich.) 78 N. W. 132; *McDole v. Purdy,* 23 Iowa, 277; *Yoemans v. Bell,* 29 N. Y. Supp. 502; *Franklin v. Walker et al.* (Ill.) 49 N. E. 556; *Jones et al v. Wolf et al.* (Tenn.) 42 S. W. 216.

We have examined all the alleged errors referred to by plaintiff in error, and we find no error in the record. The petition stated a cause of action; there was no improper joinder of causes of action; there was sufficient proof to warrant the court in overruling the demurrer to the evidence. Upon the verdict of the jury, the vendor was entitled to a lien for the unpaid purchase money, and it was the duty of the court to declare the lien and decree its foreclosure.

. We find no error in the record. The judgment is affirmed, at the costs of the plaintiff in error.

Burwell, J., who presided in the court below, not sitting; Pancoast and Garber, JJ., absent; all the other Justices concurring.