## REVARD v. HUNT.

No. 1096.   Opinion Filed November 14, 1911.

(119 Pac. 589.)

1.  DEDICATION—When Perfected—Streets and Alleys. When lots are sold with reference to a recorded plat, a dedication of the streets and alleys as laid out in such plat is deemed perfect without any affirmative official or other action on the part of the municipality or public.

2.  NUISANCE—Obstructions to Streets and Alleys—Private Right of Action to Abate. Plaintiff is the owner and occupant of certain lots on a public street and alley which are the only means of communication with the outside world. Defendant, by a fence and gates, enclosed said lots, along with all the streets and alleys leading thereto, completely obstructing plaintiff's free access to the outside world. Held, that the said obstructions constitute a public nuisance, but plaintiff is entitled to maintain an action to abate them on the ground that they are specially injurious to her.

3.  SAME—Prescription—Estoppel. Where a party is specially injured by a public nuisance and brings an action to abate the same, no lapse of time will either legalize the same or estop the injured party from bringing an action to effect its abatement.

(Syllabus by the Court.)

*Error from District Court, Kay County; W. M. Bowles, Judge.*

Action by Margaret M. Hunt against Susan Revard. Judgment for plaintiff, and defendant brings error. Affirmed.

*A. W. Comstock* and *L. A. Maris,* for plaintiff in error.

*James Q. Louthan,* for defendant in error.

DUNN, J.  This case presents error from the district court of Kay county. January 14, 1909, the defendant in error, as plain-

tiff, filed her petition, wherein she alleged that the defendant was obstructing certain streets and alleys in the town·site of Bluffdale, in that county, and that she owned two lots within the town site, and prayed for a judgment enjoining defendant from keeping and maintaining the same. The petition, with plat attached, showed that the town site was regularly laid out with streets and alleys, and that on the 1st day of August, 1898, plaintiff purchased her said lots with reference thereto. It was then averred that the defendant, unmindful of the rights of plaintiff, maintained and kept a fence around a certain number of lots and blocks of this said town site, which entirely closed the streets and alleys and entirely surrounded the lots of plaintiff upon which was located her residence, and shut her and her household off from communication with the outside world, and the outside world from communication with her. This petition defendant answered by admitting title and ownership of the real estate described in plaintiff's petition, but alleged that she had placed gates in the said fence which had at all times been used by the plaintiff and her relatives and friends and other persons in traveling between plaintiff's place of residence and the outside world, and that these gates were sufficient to permit persons to go to and from said premises, and that by reason thereof plaintiff's ingress and egress had not been curtailed. Defendant further answered that the fence referred to had been constructed for more than ten years and that it was then and had been in substantially the same condition as at the time of its construction, and that if plaintiff had a cause of action the same was barred by the statute of limitations and additional lapse of time. Both parties moved for judgment on the pleadings and the court, after hearing the argument of counsel thereon, found that the motion of counsel for plaintiff should be sustained, and adjudged that the defendant should be required to remove all fences and gates obstructing the street running north and south in front of plaintiff's property and enjoined her from the maintenance of her gates and fence. To reverse this judgment, the cause has been lodged in this court.

Counsel for plaintiff in error argue substantially three propositions in their brief, which may be stated as follows: First, that the streets and alleys mentioned in plaintiff's petition are not public highways or streets, for the reason that no dedication to the public is pleaded and that there is no allegation of any acceptance by the public of the said streets and alleys; second, that if the fence referred to constitutes any nuisance whatsoever, it is a public nuisance, and that it is not pleaded that the obstruction occurs at a point where plaintiff's property abuts on the street, and hence plaintiff suffers no special damage and cannot maintain this action to abate the same; and, third, that defendant, having maintained the fence for more than five years, has obtained the right by prescription of maintaining the same, and that plaintiff's cause of action, if she ever had any, is barred by her laches and long delay in bringing this action, as well as by the statute of limitations.

On the first proposition it is sufficient to say that the petition avers that one Broadhead caused the land within the town site of Bluffdale to be surveyed and platted into a town site, and that the plat which was attached to the petition and made a part thereof was regularly filed for record in the office of the register of deeds in that county on the 11th day of August, 1894, and duly transcribed into Plat Book One, at page twelve of the official public records of said office; and the petition then sets out a long chain of conveyances of the lots claimed by plaintiff, which shows title in her and that they were located in the town site of Bluffdale, according to the said plat.

Paragraph 578, Wilson's Rev. & Ann. Stat. 1903 (sec. 913, Comp. Laws Okla. 1909), provides, in substance, that when a plat or map is made out, certified, acknowledged, and recorded, every donation or grant to the public or any individual shall be considered, to all intents and purposes, a general warranty against the donor or donors or their grantees, and that the land intended to be used for streets, alleys, or other public uses shall be held in the corporate name of the city or town in trust for the uses and

purposes set forth or intended.  Sec. 589, Wilson's Rev. & Ann. Stat. 1903 (sec. 924, Comp. Laws Okla. 1909), provides, in substance, that, should any part of the plat be vacated, this will not abridge or destroy any of the rights or privileges of proprietors therein, nor authorize the closing or obstructing of any public highway laid out according to law.  From this it is apparent that the town site having been once platted, it could not be vacated to the prejudice of the plaintiff, and the rule seems to be that the dedication of the streets and alleys is accepted by the public, so far as the same is necessary, when any of its members purchase lots in the plat so executed and recorded.  *Roberts v. Mathews,* 137 Ala. 523, 34 South. 624, 97 Am. St. Rep. 56; *Weiss et al. v. Taylor et al.,* 144 Ala. 440; *Williams v. Poole* (Ky.) 103 S. W. 336; *Boise City v. Hon,* 14 Idaho, 272, 94 Pac. 167.

In the case of *Boise City v. Hon, supra,* the court, in its discussion thereof, said:

"It was held in *Weiss v. Taylor,* 144 Ala. 440, 39 South. 519, that 'when lots are sold with reference to a recorded plat, a dedication of the streets and alleys, as laid out in such plat, is perfected.'  No official affirmative action on the part of the city was necessary, as the right vested in the public by some of its members purchasing lots in accordance with the plat.  Upon this question, see *Garvey v. Harbison-Walker Refractory Co.,* 213 Pa. 177, 62 Atl. 778; *In re Southwestern State Normal School,* 213 Pa. 244, 62 Atl. 908; *Lins v. Seefeld* (Wis.) 105 N. W. 917; *City of Mobile v. Fowler,* 147 Ala. 403, 41 South. 468; *Thorpe v. Clanton* (Ariz.) 85 Pac. 1061; *Rhodes v. Town of Brightwood,* 145 Ind. Sup. 21, 43 N. E. 942."

And in the case of *Williams v. Poole, supra,* the court approvingly quoted from the case of *Rowan's Ex'rs v. Town of Portland,* 8 B. Mon. 232, as follows:

" 'The mere laying out of a town upon a man's land and by his own private act, and the making and the recording of a plan of the town, may not, and, as we suppose, do not of themselves, conclude him to any extent.  The land, notwithstanding these acts, is still his own, and neither any other nor the public have any right to interfere with such use of it as any man may law-

fully make of his own. Though he has laid out a town-upon the land and upon paper, he is not bound to sell the lots or to make or to authorize the making of a town in fact. If he never disposes of a lot or lots as part of the town, no one has any interest in the town as such, or any right growing out of his acts in relation to it. But, in selling to another the lots laid off as parts of the town, he creates in them an interest in the town and its plan, which place both beyond his future control. * * * The right which, as we suppose passes to the purchaser of lots as appurtenant thereto, is not the mere right or privilege that each purchaser may use the street and other public places according to their appropriate purposes; but the right acquired by each purchaser that all persons whatever, as their occasions may require or invite, may so use them, or, in other words, we suppose the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchaser that the streets and other public places indicated as such upon the plan shall be forever open to the use of the public, free from claim or interference of the proprietor inconsistent with that use.' "

The next contention is that the fence, if a nuisance at all, constitutes a public nuisance, for which plaintiff can not sue, because her property does not abut upon the street at the point of the obstruction, and that she therefore suffers no special damage.

Section 4752, Comp. Laws Okla. 1909, provides that "a public nuisance is one which affects at the same time an entire community or neighborhood," etc.; and sec. 4760, id., provides that "a private person may maintain an action for a public nuisance if it is specially injurious to himself, but not otherwise." Under the conceded facts in this case plaintiff's place of residence is surrounded by the fence of which complaint is made, and it is necessary for her to pass this fence and remove the obstruction occasioned thereby through gates in order to pass to and from her home. That the maintenance of an obstruction of this character in a public highway is a public nuisance is not denied, and the authorities are virtually unanimous in holding that a person situated as plaintiff shows herself to be has such an interest and suffers such special injury as entitles him to maintain this action. 2 Elliott on Roads and Streets (3rd Ed.) sec. 850;

2 Wood on Nuisance (3rd Ed.) sec. 733; Joyce on Nuisances, sections 218 and 424; 37 Cyc. 253; *McKay v. City of Enid et al.,* 26 Okla. 275, 109 Pac. 520; *Birmingham Ry., Light & Power Co. v. Moran et al.,* 151 Ala. 187, 44 South. 152; *Stricker v. Hillis et al.,* 15 Idaho, 709, 99 Pac. 831; *Roberts v. Mathews, supra; Miller v. Schenck,* 78 Iowa, 372; *Helm v. McClure et ux.,* 107 Cal. 199; *Fisher v. Zumwalt,* 128 Cal. 493; *Hayden v. Stewart,* 71 Kan. 11, 80 Pac. 43; *Brown v. Watson,* 47 Me. 161.

The Oklahoma case, *McKay v. City of Enid, supra,* while not decisive of the proposition involved, discusses it. In that case it appeared that McKay was the owner of a quarter section of land which lay northwest and outside of the limits of the city of Enid. Between his property and the city was the intersection of two public highways. Several city streets began at the said intersection and led from the property of plaintiff to the city. They were obstructed by the construction of a railroad over and across them under and by virtue of an ordinance of the said city. Plaintiff alleged that the railroad and the switch tracks made access to his land more difficult, and because of which the value of his property had greatly depreciated; that the company had negligently constructed its tracks upon a different grade than the streets, creating embankments and ditches and permitting cars to stand upon the tracks and thereby obstructing the public travel. A demurrer filed to the petition by the city was sustained. In the consideration of the proposition presented on appeal, this court, in an opinion by Justice Hayes, after quoting the general rule that a private party to recover for damages inflicted by a public nuisance must sustain damages of a different character, special and apart from that which the public in general suffers, said:

"The statement of the rule is easier than the application of it. It is often difficult to determine whether the injury to an individual from a public nuisance is or is not a kind that gives him a right of private action to recover damages therefor. The authorities generally hold that the injury resulting from an obstruction in a street or public highway in front of an abutting owner's property which interferes with his ingress and egress

to and from his property is a special injury to him, and many authorities hold that, although the obstruction be not in front of the abutting property, if it be in such proximity to. it upon the street or highway upon which the property abuts that the abutting owner's use and enjoyment of the property is destroyed or greatly interfered with, and its value depreciated, this injury is special and peculiar to him. And it has been held that injury to property, the access to which has been interfered with by an obstruction, although the property be not adjoining the highway or street upon which the obstruction exists, if such street or highway is the owner's only means of access to the property, is a special injury and the owner may recover therefor. *Bembe v. Commissioners of Anne Arundel Co.,* 94 Md. 321, 51 Atl. 179, 57 L. R. A. 279. But the facts in the case at bar do not bring it within any of these classes. Plaintiff's property does not abut upon any of the streets obstructed. It abuts only upon public highways into which said streets lead. He has no private easement in the streets obstructed, such as an abutting property owner has; his right therein, of violation of which he complains, is one common to all the public. Plaintiff owns property in the vicinity of these highways, and the value of his right to travel over these may be greater to him than the value of the same rights to others who have no property in the same vicinity; but this is a difference only in degree and not in kind. He does not allege that the streets obstructed constitute the only means of access to the property, or that the obstruction complained of cuts off his communication with the city."

In the case at bar the specific averment indicated as essential in the foregoing opinion and contained in the last sentence was averred, and it is conceded it exists, for, as above stated, plaintiff's residence was entirely surrounded by the fence of which the complaint is made, and it is impossible for her to reach the outside world except by the removal of the obstruction occasioned thereby.

In the case of *Stricker v. Hillis et al., supra,* it appears that sec. 3665 of the Revised Codes of Idaho is identical with sec. 4760 of Comp. Laws Okla. 1909. A demurrer to the complaint which was filed in that case was sustained, and the court in the consideration thereof reversed the action of the trial court, for the reason that "the allegation that the road is the only one

which plaintiff can use in getting out and into the place where he lives states a special injury different from that sustained by the general public. The allegation that the plaintiff's buildings are so located that there is no other way for the use and enjoyment of the same, and carrying on his business of farming without constantly using said highway, is another allegation of special injury different from that sustained by the general public."

The case of *Sloss-Sheffield Steel & Iron Co. v. Johnson,* 147 Ala. 384, which deals with this question, is extensively annotated in Vol. 11, American & English Annotated Cases, page 285, wherein the various phases of this question are considered. The cases there cited, and from which quotations are made, leave no doubt of the correctness of the rule here stated and of the right in plaintiff to maintain this action.

There remains but the further question which is presented by the claim that the delay on the part of plaintiff in bringing her action until more than five years had elapsed and until ten years had expired, gave defendant, by prescription as to plaintiff, the right to maintain the fence, or, if not, that the claim was too stale to be subject to equitable cognizance.

The question here presented is of greater difficulty than the other two, and text-writers and courts seem to have manifested more uncertainty in its determination. The nuisance which plaintiff here seeks to abate is one that is public in its nature, in that it infringes a public right, and plaintiff is given a standing to proceed against it because it infringes her private right in such a way as to specially injure her, different from the manner in which it affects the public generally. The question therefore arises whether, in so far as she is given the right to proceed, the nuisance is considered private, and hence controlled by the principles applicable to the abatement of a private nuisance, or whether she will enjoy the exalted plane occupied by the state or municipalities in their actions in such cases.

Sec. 4757, Comp. Laws Okla. 1909, provides that "no lapse of time can legalize a public nuisance amounting to an actual obstruction of public right." From this statute, as well as the

common law, it is clear that no lapse of time can legalize a public nuisance, nor can any right or title be acquired by prescription to permit or continue the same; and, after much research and full consideration, we have come to the conclusion that the same doctrine applies to a suit brought by the private person who has sustained special injuries from a public nuisance as to a suit brought by the public authorities, for the reason that a public nuisance cannot be unlawful as to the whole public and lawful as to its constituents; that it is absolutely and wholly unlawful. Authorities which directly or in principle sustain this conclusion may be noted as follows: Joyce on Nuisances, sec. 50; 2 Wood on Nuisances (3rd Ed.) sec. 727; 29 Cyc. 1237; *Town of Cloverdale v. Smith et al.*, 128 Cal. 230; *Weiss et al. v. Taylor et al., supra; Woodruff v. North Bloomfield Gravel Mining Co. et al.*, 18 Fed. 753.

In the case of *Woodruff v. North Bloomfield Gravel Mining Co. et al., supra,* the court, in discussing this question, said:

"At common law, no right could be acquired by prescription to commit, or continue, a public nuisance. In the words of Mr. Wood: 'The law is that no length of time can prescribe for a public nuisance of any description.' Wood, Nuis. 81, 30, 790-792. Or, as stated in Cooley, Torts, 613: 'It is a familiar principle that no lapse of time can confer the right to maintain a a nuisance as against the state.' The authorities to this effect are numerous and uniform. But even if it were not so, the express provisions of section 3490 of our Civil Code, 'No lapse of time can legalize a public nuisance amounting to an actual obstruction of public right,' establishes the same rule, so that it is not open to question in this state. In this connection, after stating that a right can be acquired by prescription when a nuisance is purely private, and concerns only the one person, or the few who are injured, Judge Cooley observes: 'There still remains the case of a public nuisance not complained of by the state, but by those to whom it works a peculiar injury; and whether the right to maintain it, as against such persons, can be gained by lapse of time, may possibly be open to some question. But, after considering the point, he announces his conclusions as follows: 'On the whole, the better doctrine would seem to be that the acquisition of rights by prescription can have nothing to do with the case of public nuisances, either where the state or where in-

dividuals complain of them; citing a large number of cases wherein the doctrine is recognized and stated, if the point was not necessarily involved or decided.   *Id.* 613, 614.   And 'a uniform consensus of such judicial expressions of opinion', even though not absolutely necessary to the decision of the case, 'especially where accepted by able and approved text-writers, and not contradicted by a single direct decision, is as high evidence of a doctrine or rule of law as can be found.'   *Santa Clara Co. v. Southern Pac. R. Co.,* 18 Fed. 423, and 9 Sawy. 165.   Wood also states this to be the rule, citing the authorities, pages 791, 792. In *Mills v. Hall,* 9 Wend. 315, Sutherland, J., said:  'Admitting that defendant's dam has been erected and maintained more than twenty years, and that during the whole of that period it has rendered the adjacent country unhealthy, such a length of time can be no defense to a proceeding on the part of the public to abate it or to an action by any individual for the special injury which he may have suffered from it.   8 Cow. 152, 153 ; 3 Wend. 925.'   Among other cases, Wood cites *Reg. v. Brewster,* U. C. 8 C. B. 208, where a large tract of country and a public highway had been flooded and noxious gases issuing from it were producing disease.   A prescriptive right to maintain the dam having been set up, the chief justice, in deciding the case, said:  'It was urged at the trial that the dam had been erected for more than twenty years.   For the purpose of establishing an easement affecting private rights of others this would be sufficient, generally speaking, but it is not so when the consequences of this act are a public nuisance.'   And *Rhodes v. Whitehead,* 27 Tex. 304, in which it was held that no prescriptive right could be acquired to maintain a public nuisance, and if a private party should sustain special injury, by such public nuisance, it is a private nuisance also, and the party injured could maintain the action.   'The reason is, that, being a public offense, it is unlawful in its inception and in its continuance, and being unlawful to the public in its aggregate capacity, it can never become lawful by any length of exercise against the individual members of the public.' He then adds:  'The doctrine of these cases (the last two cases cited), although reached without any very elaborate process of reasoning, and without any particular thought as to the result, nevertheless embodies the law as recognized in the courts of this country, and is supported by principle and authority.'   Wood, Nuis. 792.   We have no doubt that the rule thus stated is correct, and we so hold.   In the case of a mere private nuisance of the kind in question, by continuing it under the proper conditions

recognized by the law for the prescribed period, a right becomes vested by prescription, and, thenceforth, it is in itself lawful. But in the case of a public nuisance, it never becomes in itself lawful. It is not unlawful as to the whole public, and lawful as to its constituents, or a part of its constituents. It is absolutely and wholly unlawful. The act being unlawful, a private party sustaining special damages from the nuisance—from the unlawful act—gains a status which enables him to maintain a private action for such injury. When a private person thus obtains a standing in court, by reason of his having suffered special damages, although he can only maintain his suit for an injunction on that ground, yet the court grants relief, not solely because the nuisance is private so far as he is concerned, but because it is public, and the relief will benefit the public. Such appears to be the doctrine of the Supreme Court as declared in *M. & M. R. Co. v. Ward,* 2 Black, 492. Says the court: 'A bill in equity to abate a public nuisance, filed by one who has sustained special damages, has succeeded to the former mode in England of an information in chancery prosecuted on behalf of the crown to abate or enjoin the nuisance as a preventive remedy. The private party sues rather as a public prosecutor than on his own account; and unless he shows that he has sustained, and is still sustaining, individual damage, he cannot be heard. He seeks redress of a continuing trespass and wrong against himself, and acts in behalf of all others who are or may be injured."

In the case of *Weiss et al. v. Taylor et al., supra,* the public way to a burial lot had been for more than twenty years obstructed by defendant by placing a wall across it. It was insisted and confessed in that case that the complainants were barred both by limitations and laches, unless they were in a position to invoke the doctrine that time or estoppels do not run against the state, and that where an individual becomes the actor and attempts to assert the rights of the state or the public, he could invoke the right of the state in being exempted from the operation of the statute of limitations and of laches. The Supreme Court said on this subject:

"The statute of limitations is no defense to a bill filed for the abatement of a public nuisance. *Wright v. Moore,* 38 Ala. 593; *Olive v. State,* 86 Ala. 88, 5 South. 653, 4 L. R. A. 33;

*Reed v. Birmingham,* 98 Ala. 339, 9 South. 161; Dillon on Munic. Corp. Vol. 2, § 675; Elliott on Roads & Streets, p. 490."

According to the view expressed in the foregoing authorities, we therefore conclude that plaintiff was neither estopped nor barred by laches or limitations from the assertion of the claim which she made in her petition, and that the judgment of the trial court, under the facts found and the theory of counsel on the trial thereof and in this court, must be affirmed.

All the Justices concur.