Robert S. KENNEDY and Helen E. Williamson, Executrix of the Estate of Myron B. Williamson, deceased, Plaintiffs in Error,

v.

Claud HAWKINS, Defendant in Error.

No. 38086.

Supreme Court of Oklahoma.

March 31, 1959.

Rehearing Denied June 16, 1959.

Application for Leave to File Second Petition for Rehearing Denied Nov. 17, 1959.

A. James Gordon, McAlester for plaintiffs in error.

.W. J. Hulsey, McAlester, for defendant in error.

BERRY, Justice.

The parties occupy the same relative position here that they occupied in the trial court and will, therefore, be referred to herein as they appeared in the trial court.

Under the provisions of a February 19, 1912, Act of Congress (37 Stat. 67), Townsite Addition No. 4 adjoining the City of McAlester, Oklahoma, was platted. The plat, showing the lots and dedicated streets making up the addition was filed in the office of the County Clerk of Pittsburg County, Oklahoma. The addition has never become a part of the City of McAlester.

Defendant acquired by purchase a patent to Lot 22 from the Choctaw and Chickasaw Nation of Indians. John M. Moody acquired by purchase a patent to Lot 25 from said Nation. These lots were a part of the above referred-to addition. Lots 22 and 25 are each approximately 660 feet long (north and south) and 330 feet wide (east and west). Lot 25 lies west of Lot 22. As platted, there is a 60-foot roadway, hereafter referred to as "strip", between the lots. The asserted right of plaintiffs and others to use said strip as a roadway resulted in this suit. The strip which is 60 feet wide (east and west) and approximately 660 feet long (north and south) abuts South Street which extends east and west and lies north of Lots 22 and 25. At all times in controversy South Street was a well-traveled and maintained street.

In 1923 defendant and another person built a fence on a north and south line beginning 30 feet west of the northwest corner of Lot 22 and extending south 150 feet where the fence jogged at a right angle due west 30 feet and intercepted the fence which extended north and south along the east side of Lot 25. A wire gate was maintained in the above referred-to 30-foot section of fence which gate was used by plaintiffs and others to gain access to the south portion of Lot 25. Defendant attempted to bar and lock said gate a few years prior to the trial of this case. The plaintiffs and others on occasions removed the lock (on occasions locks), took down the gate and thereby gained entrance to the south portion of the strip. The defendant threatened to kill one or more of the persons who took down the gate, and from his testimony it appears that his thoughts ran to violence on the date of the trial. The west half of the 60-foot strip is unfenced north of the point where the 30-foot section of defendant's fence intercepts the fence along the east side of Lot 25. That portion of the 60-foot strip which lies south of the referred-to gate has always been enclosed by fences erected and maintained by defendant and/or the owner of the south portion of Lot 25. Defendant has pastured the south portion of the strip. He and other persons have used the unfenced north portion of the strip as a roadway

and defendant has also stored material thereon. Defendant claims title by prescription to all of the strip through adverse possession thereof for more than fifteen years.

The trial court first entered judgment for the plaintiffs. The defendant thereunder was ordered and directed to remove obstructions that he had placed on strip and was restrained and enjoined from interfering with the use of the strip as a highway.

The defendant filed a motion for new trial and upon said motion being considered, the first judgment was vacated and judgment was entered for defendant. The trial court found in substance that the strip in controversy was never dedicated because it was never accepted by the County Commissioners, or any other public authority authorized to accept the dedication; that the defendant had been in adverse possession of the strip since 1923 by agreement with John M. Moody, and had title to said strip by prescription; that plaintiffs' grantor was out of possession of the strip and had not been in possession thereof for more than one year prior to his conveyance of an interest in the strip in controversy and for said reason the conveyances under which plaintiffs claimed were champertous and void; that plaintiffs should be enjoined from trespassing upon the strip. It appears that the trial court was convinced that the provisions of 69 O.S.1951 § 362, to the general effect that Boards of County Commissioners may establish public roads on section lines by amicable settlement or condemnation proceedings applied here. As hereafter pointed out 11 O.S. 1951 § 511 et seq., and not the above statute applies.

The plaintiffs filed a motion for new trial and from the order denying same, perfected this appeal.

The only pertinent testimony in the record relative to John M. Moody's action in connection with fences is that defendant was asked to "tell the court that as long as Mr. Moody owned this property there was nothing ever said between you and him about this not being the correct line". Defendant answered "not a thing". Mr. Moody lived in Brooklyn, New York, and was in the vicinity of the lots only a few times. There is nothing in the record to show that he knew the exact location of the strip or that he knowingly agreed that defendant's property line was other than as shown by the recorded plat. In any event, the referred-to proof did no more than tend to establish defendant's claim to the strip based upon prescription which proof, in view of our decision herein, is without probative effect.

■      In Stockton v. Board of Commissioners of Pittsburg County, 184 Okl. 150, 85 P.2d 403, we had occasion to consider the proposition of whether the statutes of this State relating to vacating plats of land for town or city purposes which were prepared and filed in accordance with the federal act heretofore referred to, are applicable in vacating such plats. We there held that said statutes, which statutes are 11 O.S.1951 § 511 et seq., supra, were applicable to such plats irrespective of whether the lots were within or without the corporate limits of a city or town. We quote the first paragraph of the syllabus of the cited case:

"The procedure outlined by sections 6148 and 6149, O.S.1931, 11 Okl.St. Ann. §§ 523, 524, is available and appropriate, and the district courts of this state are vested with jurisdiction to vacate a plat or a portion of a plat of any tract of land platted for town or city purposes even though such tract of land was originally and prior to sale thereof platted pursuant to an act of Congress in furtherance of the sale of the segregated lands of the Choctaw and Chickasaw tribes of Indians and regardless of whether the platted land is within or without the corporate limits of a municipality."

■ We have held on several occasions that where lots are sold with reference to a recorded plat, a dedication of the streets laid out in said plat is deemed perfect without any affirmative official or other action

on the part of the municipality or public. See fourth paragraph of syllabus, Siegenthaler v. Newton, 174 Okl. 216, 220, 50 P.2d 192, 199, and cases cited.

█ It is also established in this jurisdiction that the only way a dedicator or his grantee can obtain title to platted streets is under and by virtue of 11 O.S.1951 § 511 et seq., supra. The sixth paragraph of the syllabus of Siegenthaler v. Newton, supra, reads as follows [174 Okl. 216, 220, 50 P.2d 193]:

"6. Where the owner of property plats the same and files his dedication of the streets shown thereon, as required by the provisions of article 7, chapter 33, of the Oklahoma Statutes. 1931 (section 6137 et seq.) [11 O.S.1951 § 511 et seq.] the only way in which title to any portion of such streets may be revested in the dedicator, or his grantees, is under and by virtue of the provisions of said article 7, chapter 33."

In the body of the opinion in the last-cited case, we had this to say:

"(7) The question as to whether the above strip of ground ceased to be a public street or highway by abandonment, misuser, or nonuser is also foreclosed by the decision of this court in the case of Revard v. Hunt, supra [29 Okl. 835, 119 P. 589]. In that case the defendant, by fences and gates, had obstructed certain streets and alleys for more than ten years, and he contended that he had thereby obtained the right by prescription of maintaining the same, and that the plaintiff's cause of action was barred by laches and long delay in bringing the same, as well as by the statute of limitations. It was held, however: 'Where a party is specially injured by a public nuisance, and brings an action to abate the same, no lapse of time will either legalize the same, nor estop the injured party from bringing an action to effect its abatement'.

"The theory of the above holding was that the obstruction of a public highway is a public nuisance, that no lapse of time will legalize the same as against the public, and that, where an individual, by reason of special injury, is able to maintain an action to abate such nuisance, he enjoys 'the exalted plane occupied by the state or municipalities in their action in such cases.' The court's conclusion was reached after 'much research and full consideration,' and numerous authorities are cited in support thereof."

See also City of Tulsa v. Aaronson, 103 Okl. 159, 229 P. 596, where it is pointed out in the first paragraph of the syllabus that "the only way in which title to any portion of the streets, alleys, or public grounds shown in such dedication may be revested in the dedicator is by proceeding in the district court."

█ In view of the fact that defendant did not have adverse possession of the strip in controversy, the conveyances under which plaintiffs claim an interest in said strip are not champertous. We pointed out in Bartlett v. Lashley, 204 Okl. 299, 302, 229 P.2d 185, 188, that "actual possession by (a person), so long as no one held adverse to him, could not make the section of the statute relied on (21 O.S.1951 § 548), applicable." See also Webb v. Ketcham, 157 Okl. 294, 12 P.2d 191, and in Evans v. Terrill, 189 Okl. 577, 118 P.2d 250.

█ The judgment of the trial court is against the clear weight of the evidence. In view of the fact that this case is one of equitable cognizance, the trial court is directed to enter judgment for plaintiffs, ordering and directing the defendant to remove all obstructions from the strip that he may have placed thereon and enjoining and restraining defendant from placing any obstruction on the strip that would prevent same from being used as a highway, or doing or threatening to do anything that would prevent or tend to prevent use of the strip as a highway, and for such other equitable relief as the facts may warrant.

Reversed with directions.