Dear Honorable Taylor,
The Attorney General has considered your request for an opinion wherein you ask the following question:
"Does a municipal corporation have the power to effectively release aneasement acquired for purposes other than for streets, alleys and publicways, by way of a release rather than by vacation by resolution orordinance?"
The underlying factual situation giving rise to this opinion request is the existence of an "unneeded" utility easement which the owner of the servient estate desires to abolish. Easements for utility purposes may be created by express grant, condemnation, dedication, or by operation of law. Generally such easements are created when land is platted, by way of the grantor reserving in certain property a utility easement, although the plat can dedicate the easement to the city or to the public for such use. Streets and other public ways are generally dedicated to the city for the use of the public by the express terms of the plat. The question presented is whether the city may validly divest itself and the public of such an easement by written instrument, without the fee owner of the property affected obtaining an Order of Vacation from the district court.
The method to be followed to terminate public or private rights in a public way, easement, or plat and to vest the title to the estate in private ownership is specified in 11 O.S. 42-101[11-42-101] et seq. (1977). The procedures therein specified apply to easements, which are defined as:
 ". . . rights in real property as set forth in 60 O.S. 49 of the Oklahoma Statutes, . . . ." 11 O.S. 42-101.4 (1977).
While 60 O.S. 49 (1971) does not expressly provide a category for utility easements, such easements were clearly within the contemplation of the Legislature when enacting Article 42 of the Municipal Code. The references made in 11 O.S. 42-105 and 11 O.S. 42-110 (1977) to the rights of transmission companies, and to utility easements per se, plainly indicate the intention of the Legislature to include such easements within the scope of the Act. Statutes are construed to give effect to the Legislative intention, Midwest City v. Harris, 561 P.2d 1357 (Okla. 1977).
Under the statutory scheme, a city has no authority to grant a unilateral release of a public way or easement. The city has the power to "close" a public way or easement by the provisions of 11 O.S. 42-110 (1977). "Close" as defined in 11 O.S. 42-101.1 means to ". . . discontinue the public use of a public way or easement without affecting title to real property." The power to "vacate" such easements, the act which as defined in 11 O.S. 42-101.2 operates to effect a transfer of title, lies with the district court. Under the statutory scheme, therefore, the city would have no authority to execute a release of a public way or easement thereby divesting the public of its rights in that easement.
It is established law that the statutory method of revesting in the dedicator title to streets, alleys, or public grounds dedicated to the city, in trust for the public, prevails over contrary powers granted by the city charter. See, for example, City of Tulsa v. Aaronson,103 Okla. 159, 229 P. 596 (1924), and Kennedy v. Hawkins, 346 P.2d 342
(Okla. 1959). The Supreme Court has ruled that cities have no power to dispose of land held for public use and the benefit of its citizens, charter provisions to the contrary notwithstanding, State ex rel. Remy v. Agar, 559 P.2d 1235 (Okla. 1977). The basic principal underscored in those cases is that property held by the city and devoted and used for a governmental purpose is held by the city in trust for the public, see Green v. City of Norman, 455 P.2d 58 (Okla. 1969), concerning power to dispose of streets. As the Supreme Court has ruled that the interest in public streets acquired by a city by dedication in a plat is that of an easement for public purposes, Board of Trustees of Town of Taloga v. Hadson Ohio Oil Co. et al., 574 P.2d 1038 (Okla. 1978), streets and utility easements are on the same footing. There is no rational distinction between the two types of interests upon which the city could predicate a power to unilaterally divest the public of a utility easement. The statutory provisions of 11 O.S. 42-101[11-42-101] et seq. (1977) are the exclusive method for divesting the public of its rights in public ways and easements.
It should be noted that the provisions of Article 42 of Title 11 of the Oklahoma Statutes run to "public ways and easements." The easements therein contemplated are those easements used for a public or governmental purpose. It is permissible for a city to have an easement granted to the city in its corporate, proprietary function and capacity which is not affected with a public or governmental use. Property held by a city, title to which is in the city as a corporate entity, which is held solely for a proprietary purpose and which is no longer useful or needed, may be conveyed by the city, State ex rel. Remy, supra. There is no logical reason why the same is not true of grants of easements which are acquired, held, and used in the same capacity.
The purpose and intent of 11 O.S. 42-101[11-42-101] et seq. (1977) was to restrict the power of municipalities to cut off public rights in streets, alleys, ways, and easements, and to prevent cities from divesting public rights for purely private purposes. The same rationale does not apply to those easements granted to the city as such, and not as trustee for the public, which easements are or have been used solely for proprietary as opposed to public purposes. Dedicated utility easements do not, however, fall into this class.
It is, therefore, the opinion of the Attorney General that yourquestion be answered as follows: A municipal corporation has no power orauthority to affect title to property by releasing an easement granted ordedicated to the city for public or governmental uses and purposes; theprocedure specified in 11 O.S. 42-101[11-42-101] et seq. (1977) is theexclusive method of extinguishing an easement granted or dedicated to thecity for the benefit and use of the public.
JAN ERIC CARTWRIGHT, ATTORNEY GENERAL OF OKLAHOMA
JOHN GREGORY THOMAS, ASSISTANT ATTORNEY GENERAL