# KEE v. SATTERFIELD.

No. 4086.   Opinion Filed May 25, 1915.

(149 Pac. 243.)

1. **APPEAL AND ERROR—Harmless Error—Overruling of Demurrer.** Where a demurrer for misjoinder of causes of action may have been improperly overruled, yet if the demurrant was not harmed by such ruling, the judgment will not be reversed, following the provisions of Rev. L. 1910, sec. 6005.

2. **PLEADING—Proof—Requisites—Form of Action.** Under the provisions of the Code, it is not necessary that a pleading state facts to bring the cause under any particular form of action at common law, but it is sufficient if the pleading state facts in a plain and concise manner, from which the court can see that the plaintiff is entitled to some legal or equitable relief.

3. **CONTRACTS—Vendor and Purchaser—Land Sale Contract—Construction.** A contract will be construed so as to give effect to the intention of the parties as it existed at the time the contract was made, so far as it can be ascertained. So, where a contract for the sale of land provided that the consideration was $5,000 in cash, and the further consideration of $1,000 worth of lots to be platted and laid out, being a portion of the land sold, but the contract further provides that the vendor agrees to pay the market price for said lots at the time they are set apart and conveyed to him, held, that the true meaning of the contract is that the price of the land is $6,000, $5,000 of which to be paid in cash, and the balance of $1,000 in lots to be set apart and conveyed to the vendee.

4. **VENDOR AND PURCHASER—Land Sale Contract—Purchase Price—Uncertainty in Description.** Such contract is not void for uncertainty in the description of the land, because the $1,000 worth of lots is a part of the purchase price, and not an agreement on the part of the vendor to buy any specified lots.

5. **LIMITATION OF ACTIONS—Vendor and Purchaser—Running of Statute—Land Sale Contract—Demand and Forfeiture.** Under the provisions of the above contract, it is the duty of the vendee, or a purchaser from him with notice, to set apart and convey to the vendor $1,000 worth of lots, and the statute of limitations does not begin to run against the vendor until a demand and forfeiture to set apart and convey such lots.

6.    **DEDICATION—Implied Dedication—Requisites—Platting of Land.**
Dedications of land for public purposes are of two kinds: First,
statutory; and, second, implied or dedications at common law.
All that is required to make an implied dedication is the assent
of the owner and the use of the premises for the purposes in-
tended by the dedication, for the reason that the law considers
the acts of the owner as an estoppel in pais, and precludes him
from revoking the dedication. So, where land is platted into
streets, lots, and blocks, and the lots are sold according to the
plat, the dedication is complete as a common law or implied
dedication, although some of the requirements of the statute
have not been observed.

7.    **VENDOR AND PURCHASER—Vendor's Lien—Judgment Against
Subpurchaser.** Where a vendor of land makes an absolute deed
prior to the payment of all the purchase price, a personal judg-
ment cannot be rendered against a subpurchaser, although he
took with notice that a part of the purchase price was unpaid,
but in such case the original vendor is entitled to a judgment
in rem against any of the land remaining in the possession of
such subpurchaser.

(Syllabus by Devereux, C.)

*Error from Superior Court, Custer County;*

*A. J. Welch, Special Judge.*

Action by L. D. Satterfield against O. B. Kee. Judgment
for plaintiff and defendant brings error. Modified and affirmed.

The amended petition in this action, upon which the case
was tried, alleges, in substance, that on the 24th of March, 1902,
the plaintiff, Satterfield, was the owner of certain land described
in the petition, and that on this date one A. F. Kee, through
O. B. Kee, his brother, offered to purchase this land, and agreed
to pay the sum of $5,000 and to plat the land in lots and blocks
and when so platted to convey to the plaintiff $1,000 worth of
said lots, based upon the market price, within 30 days after the
location of the Southwestern Normal School had been decided by
the Supreme Court of the territory of Oklahoma. The contract
is set out in full in the petition, but is not set out here, as it
will be found in the findings of fact by the judge, hereinafter

set out in full. The petition further alleges that in pursuance of this contract, and for the purpose of enabling Kee to plat the land in lots and blocks, and to avoid clouding the title, and as a part of the transaction, Satterfield and wife executed a warranty deed to said Kee for the land in question. The petition further alleges that while this contract and deed ran to A. F. Kee, they were taken for the sole benefit of O. B. Kee, the plaintiff in error. The petition further alleges that O. B. Kee was present at the time the contract and deed were made, and had full knowledge thereof, and that on or about November 1, 1902, the litigation relative to the location of the Southwestern Normal School came to an end, and it was established at Weatherford upon a part of the quarter section in controversy, which had been omitted from the deed from Satterfield to Kee for this purpose; that about the 7th day of August, 1903, and after the location was determined, O. B. Kee, the plaintiff in error, caused this land to be surveyed into lots and blocks, and made a dedication thereof, the certificates of which are set out in the petition, but are not necessary to be set out here, and that the plaintiff in error has sold and disposed of all of said land except certain portions set out in the petition, and not necessary to be designated. The prayer of this petition is that the market value of the lots retained by Kee be established as of August 7, 1903, and partition be had and decreed thereof as between the plaintiff and defendant, and there be set aside to the plaintiff such lots as in the aggregate will equal $1,000 on September 27, 1903; and that said O. B. Kee be required to execute to plaintiff a deed therefor, or that the decree be taken as such, or that the sheriff make a deed to plaintiff as provided by statute, and, further, that commissioners be appointed to set aside to plaintiff same, and that partition be had, and that the plat of land be corrected and decreed regular, and that plaintiff have his costs, etc.; and that the plaintiff's title be quieted, and for other further relief. The second cause of action in the petition is a cause of action in ejectment pure and simple. Afterwards, and when the case was called for trial, Satterfield, the

plaintiff below, was allowed to amend the prayer for judgment as follows:

"That in the event the court cannot decree the plaintiff to be entitled to an interest and estate in said real estate as hereinbefore prayed for, then, in that event, plaintiff have judgment for $1,000, with interest according to law, and for such other. and further relief as may be just."

To this amended petition there was a demurrer on the ground of misjoinder of causes of action, and because the amended petition did not state facts sufficient to constitute a cause of action. This demurrer was overruled, and exceptions duly saved. The defendant then answered, denying all of the allegations of the petition, and pleading the two-year statute of limitations, the five-year statute of limitations, and the three-year statute of limitations. By consent a jury was waived, and this cause was submitted to the court, who made the following findings of fact and law:

"First. A. F. Kee and L. D. Satterfield entered into a written contract on March 24, 1902, in words as follows:

" 'This contract, made and entered into this the 24th day of March, 1902, by and between I. D. Satterfield, party of the first part, and A. F. Kee, party of the second part, all of the county of Custer and territory of Oklahoma, witnesseth: That the party of the first part has this day sold to the party of the second part the N. W. quarter of section eight (8), in township twelve (12) N. of range fourteen (14) W. I. M., situated in Custer county, O. T., for the consideration of $5,000.00, five thousand dollars, to be paid in cash as soon as the party of the first part shall make or cause to be made to the party of the second part a good and sufficient deed of general warranty to the same, and the further consideration of $1,000.00 worth of lots to be platted and laid out in lots and blocks, a portion of the above-described lands to be so laid out and platted as above stated within thirty days after the matter of the location of the Southwest Normal

College shall have been finally passed upon and settled by the courts of the territory of Oklahoma, which is now in litigation in the courts and situated upon said land above described.

" 'Said party of the first part hereby agrees to pay the market price for said lots aforesaid at the time the same are set apart and conveyed to him by proper deed of general warranty; and it is hereby agreed by the parties hereto that the party of the first part here now makes to the party of the second part his check for $500.00 as a forfeit if he shall fail to carry out the agreements binding upon him in the above contract, and the party of the second part makes his check to the party of the first part for the sum of $500.00 upon the terms and conditions as stated for the first party, said checks to be deposited with this contract in the National Exchange Bank and taken out of the same by the mutual consent of both parties hereto.

" '[Signed]                                    A. F. Kee,

" 'L. D. Satterfield.'

"Second. On the same day, and as a part of the same transaction, L. D. Satterfield and wife executed and delivered their deed of said land to A. F. Kee, and received from him $5,000 in the form of a check, which was afterwards paid in due course.

"Third. On March 24, 1902, in the evening after the transaction between A. F. Kee and L. B. Satterfield, A. F. Kee conveyed the land to O. B. Kee for a consideration of $5,000.

"Fourth. O. B. Kee had at the time actual notice of the written contract above set out between A. F. Kee and L. D. Satterfield.

"Fifth. On the 4th day of October, 1902 (after the litigation involving the location of the Southwest Normal had been finally decided by the Supreme Court of Oklahoma), O. B. Kee caused said land to be surveyed into lots, blocks, streets, and alleys, and filed said plat with the register of deeds of Custer

county, but the certificates on the plat do not conform to the requirements of the statute.

"Sixth. The plaintiff, through H. P. Bailey, his attorney, about four years after this transaction, demanded of O. B. Kee $1,000 worth of lots under said contract, and O. B. Kee refused to convey the same.

"Seventh. That O. B. Kee, at the time of the commencement of this action, was and now is the owner of the E. ½ of block 4; the W ½ of block 5; lots 7 to 12 in block 7; lots 1 to 9 in block 8; lots 7 to 12 in block 11; lots 1 to 6 in block 23; lots 1 to 12 in block 22; and a plot of land south of what is known as the Simpson tract, and west of the waterworks tract, the same being a part of the land described in said contract, and conveyed by L. D. Satterfield to A. F. Kee, and by A. F. Kee to O. B. Kee, which land was platted as aforesaid.

"Eighth. That lots 1 to 15 inclusive, in block 4, the same being the E. ½ of block 4, were worth, on or about August 7, 1903, and during the balance of the year, the sum of $35 per lot; that lots 1 to 15, in block 5, being the W. ½ of block 5, were of the market value of $35 per lot; that lots 1 to 9 in block 6 were of the market value of $40 per lot; lots 7 to 12 in block 7 were of the market value of the $40 per lot; lots 1 to 9 in block 8 were of the market value of $50 per lot; lots 7 to 12 in block 11 were of the market value of $50 per lot; lots 1 to 12 in block 22 were of the market value of $40 per lot; that lots 1 to 6 in block 23 were of the market value of $40 per lot; that the plot of ground south of the Simpson tract and west of the waterworks tract, consisting of two acres, was of the market value of $150 per acre.

"Ninth. That of the total value of said lots and tract of land on or about August 7, 1903, and during the balance of said year, was $3,420.

"Tenth. That by said agreement it became O. B. Kee's duty to convey to L. D. Satterfield such of the lots as to him seemed proper at said market price, to the aggregate amount of $1,000,

and he now has the right to select and convey such of said lots at said prices as to him may seem best.

"Eleventh. That said lots, based upon said market price, are capable of division, and it is not necessary to sell same to make division thereof.

"Conclusions of Law.

"First. That L. D. Satterfield has an interest in said lots, equal in amount to $1,000, and interest from August 1, 1903.

"Second. That the record title to said lots is in O. B. Kee, but that he holds L. D. Satterfield's interest aforesaid in trust under the express trust found in said written contract and deed.

"Third. That the said contract and deed from L. D. Satterfield to A. F. Kee is one contract, and must be read and construed together.

"Fourth. That it became the duty of O. B. Kee, as assignee of A. F. Kee, to plat said land into lots and blocks, streets and alleys, within 30 days after the matter of the location of the Southwest Normal College shall have been finally decided in the courts, and to deed to Satterfield $1,000 worth of the lots upon his demand, at the market value at the time platted.

"Fifth. That, owing to the contract and intention of the parties and the peculiar interest plaintiff had in the property, and owing to the fact that under the contract A. F. Kee or O. B. Kee, his assignee, with notice, was required to do and perform certain duties on behalf of and for the benefit of the plaintiff, to properly and legally lay off, survey, and plat said property into lots and blocks, and properly file a plat thereof, as required by law, and dedicating the streets and alleys to the public, all of which he has failed to do, the defendant cannot invoke the technical defense of the statute of limitations.

"Sixth. The plaintiff did not make demand upon the defendant to perform the conditions of the contract until four

years after the date on which it was agreed that the defendant would plat said property and convey the $1,000 worth of lots, and for this reason the plaintiff will not be entitled to recover interest prior to the date he made demand.

"Seventh. The plaintiff is entitled to recover $1,000, and interest from the day be made demand, for the performance of the contract, and he is entitled to a lien upon the property des-. cribed in the petition, from which said amount shall be satisfied."

There was a judgment for the plaintiff for $1,000, with interest at 7 per cent. from the 4th day of October, 1906, being the date when the demand was made, up to the 16th day of November, 1907, being the date when the Constitution of Oklahoma was adopted, and 6 per cent. from the 16th day of November, 1907, up to December 31, 1911. There was a motion for new trial, which was overruled and exception properly saved, and the plaintiff in error brings the case to this court by petition in error and case-made.

*John C. Shull, Morgan & Deupree,* and *Keaton, Wells & Johnston,* for plaintiff in error.

*Geo. T. Webster,* for defendant in error.

DEVEREUX, C. (after stating the facts as above). The plaintiff in error argues together the first, second, third, fourth, fifth, and sixth assignments of error, which raise substantially the questions: (a) Whether, under the evidence (which it is admitted is correctly summarized in the findings of fact by the court, except finding No. 10, which, it is claimed, is a conclusion of law) the plaintiff is entitled to recover; (b) whether the lower court erred in overruling the demurrer to the amended petition; (c) whether the plaintiff's cause of action is barred by the statute of limitations; (d) whether the contract is void under the statute of frauds.

. .. If it be admitted that there was a misjoinder of causes of action, the error was harmless under the provisions of section 6005, Rev. L. 1910, because, after an examination of the entire record, we cannot say that the error complained of has probably resulted in a miscarriage of justice. See *Mullen v. Thaxton,* 24 Okla., 643, 104 Pac. 359, which holds that, although a demurrer may have been improperly overruled, yet if the demurrant was not harmed by such ruling, the judgment will not be reversed.

The other questions require a construction of the contract. The trial court having found that O. B. Kee took with notice of the contract, it very properly held also that the contract between Satterfield and A. F. Kee and the deed must be construed together. Rev. L. 1910, sec. 952. The terms of this contract are somewhat confused, but we think the proper construction is that A. F. Kee purchased the land for the consideraeion of $5,000 in cash, and $1,000 in lots, when the same were platted and laid out. In other words, the real consideration was $6,000, $5,000 of which was to be paid in cash, and $1,000 worth of lots when the location of the Southwestern Normal College was finally settled, and the land platted and laid out in lots, which was to be done within 30 days after the location of the Southwestern Normal College was finally passed upon. The contract, however, contains this further seeming contradictory provision:

."That said Satterfield agrees to pay the market price of these lots at the time they are set apart and conveyed to him."

Section 946, Rev. L. 1910, provides:

"A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."

Section 951:

"The whole of a contract is to be taken together, so as to

give effect to every part, if reasonably practicable, each clause helping to interpret the others."

Section 957:

"A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates."

Section 958:

"However broad may be the terms of a contract, it extends only to those things concerning which it appears the parties intended to contract."

Applying these rules of construction, it will be noted that the consideration set out in the contract is:

"$5,000.00 to be paid in cash * * * and the further consideration of $1,000.00 worth of lots to be platted and laid out," etc.

The provision in the contract that Satterfield "agrees to pay the market price for said lots at the time the same are set apart and conveyed to him," must be construed as fixing the value of lots he was to take in liquidation of the $1,000 worth of lots provided for as a part of the consideration, and which could not be ascertained at that time, and he agrees that the value of such lots shall be fixed at the time they are set apart and conveyed to him. This seems to us the only reasonable construction that can be placed on this contract to give effect to all of its terms. To say that the contract means that Satterfield sold the land for $5,000 cash, and reserved the right to buy back lots worth $1,000, after they had been surveyed, is to entirely ignore the provision which expressly makes $1,000 worth of lots a part of the consideration for sale, while the construction we have given it gives force and meaning to all of its terms.

What is above said disposes of the questions raised by the plaintiff that the contract is void under the statute of frauds. The argument of the plaintiff in error is that, because the description of the $1,000 worth of land is indefinite, the contract is void under the statute of frauds. This argument is founded on the construction of the contract claimed by the plaintiff in error that by it Satterfield was to buy $1,000 worth of lots after they have been surveyed, but under the construction we have given the contract, it is a part of the purchase price, and, of course, the statute of frauds has no application.

This brings us to the question whether, under the findings of fact, the plaintiff below was entitled to recover, and, was there error in overruling the demurrer to the evidence? These may be considered together. The plaintiff in error does not set out any abstract of the evidence in his brief, because he says that the findings of fact by the court (except No. 10, which he claims is a conclusion of law) is an excellent abstract of the evidence.

We are of the opinion that these facts, taken in connection with the proper interpretation of the contract, are sufficient to warrant a judgment for the plaintiff. The argument of the plaintiff in error proceeds on the theory that this is an action for specific performance under the first cause of action, and of eject- under the second, and that the evidence does not warrant relief for either. But this petition sets out all the facts, and if on these facts the plaintiff is entitled to any relief, which is sustained by the evidence, the judgment is proper.

In *Hawkins v. Overstreet*, 7 Okla. 277, 54 Pac. 472, it is held:

"A motion for judgment for the defendant upon the pleadings will not be sustained where, upon any or all the pleadings in the case, taken together, facts are stated which show that the plaintiff is entitled to some legal or equitable relief."

On page 280 of 7 Okla., on page 473 of 54 Pac., the court says:

"Plaintiff in error contends that the petition was for wrongful taking and conversion of the property described, that the action was one of trover and conversion, and that the rules of pleading pertaining to the action of trover at common law should have been applied by the court to the pleadings in this case. * * * We have no action of trover. Section 10 of our Code of Civil Procedure provides: 'The distinction between actions at law and suits in equity, and the forms of all such actions and suits heretofore existing, are abolished, and in their place there shall be hereafter but one form of action, which shall be called a civil action.' Section 85 of said Code provides: 'The rules of pleading heretofore existing in civil actions are abolished and hereafter the forms of pleadings in civil actions in courts of record and the rules by which their sufficiency may be determined, are those prescribed by this Code.' The only rule of the Code for stating the facts in any petition is found in section 87 of said Code, and simply. requires that the petition contain 'a statement of the facts constituting the cause of action, in ordinary and concise language, and without repetition.' It is not necessary that the facts should be stated in such manner as would have entitled the plaintiff to a recovery under any particular form of action. It is sufficient if facts are alleged which show a right to recovery by the plaintiff against the defendant under the general principles of law determining the rights of parties, and without regard to what may or may not have been the rules of pleading or stating a cause of action before the adoption of our Code."

This case has been cited with approval in *Earl v. Tyler*, 36 Okla. 179, 128 Pac. 269.

In the case at bar the petition sets out the written contract, and that the plaintiff in error has never performed his part thereof, and, construing the contract, as we do, that the $1,000 in lots is a part of the consideration for the deed, facts sufficient are alleged to sustain the judgment. In its findings of fact, the court below finds, substantially, that the allegations of the petition are true, and this is sufficient to sustain the judgment, unless the

cause of action, is barred by the statute of limitations, which we will not consider. We agree with the plaintiff in error that there is no trust relation between Satterfield and O. B. Kee sufficient to toll the statute, but the relation is that of vendor and vendee, and the action must be treated as one for the recovery of a balance due on the purchase money. We do not agree with the contention of the defendant in error that the statute did not begin to run, because this has never been a proper statutory dedication. It appears that the defendant in error, together with his wife, filed a plat of their land, laid off in lots, blocks, streets, and alleys, which was duly filed for record on August 7, 1902, and lots sold in accordance therewith. This was a sufficient common-law dedication. See Elliott on Roads and Streets, page 91; *Morgan v. Railway Co.,* 96 U. S. 723, 24 L. Ed. 743; *City of Cincinnati v. White,* 6 Pet. p. 431, 8 L. Ed. 452; *New Orleans v. U. S.,* 10 Pet. 662, 9 L. Ed. 573; *Bank v. Oakland,* 90 Fed. 698; *Davenport v. Buffington,* 97 Fed. 234.

In *Morgan v. Railway Co.,* 96 U. S. 723, 24 L. Ed. 743, the court says:

"All that is required [to make a valid dedication] is the assent of the owner and the use of the premises for the purposes intended by the appropriation. The law considers the owner's acts and declarations as in the nature of an estoppel *in pais,* and precludes him from revoking the dedication."

But we are of the opinion that the platting and dedication of this land did not start the running of the statute. The contract does not provide that on the platting and dedication Satterfield should be entitled to $1,000 worth of lots, but—

"that he agrees to pay the market price for said lots, at the time the same are set apart and conveyed to him by proper deed of general warranty."

As we have construed the contract, this means that the balance

of the purchase price, to wit, the $1,000 worth of lots, is to be paid when the lots were set apart and conveyed to him. This it was the duty of Kee to do, he having notice of the contract, and, having failed to do so, he cannot claim that the statute began to run before he had fulfilled the obligations imposed on him by the contract. In 7 Encl. Supreme Court of the United States Court Reports, 1015, it is said:

"Where payment is provided out of a particular fund to be created by the act of the debtor, he cannot plead the statute of limitations, until he shows that the fund has been provided."

The court found as a fact that the demand on Kee was made about four years after this transaction, which would make the demand in 1906, and this action was commenced on October 29, 1909. As we construe this contract, the action was not barred until five years after the demand. The statute of limitations therefore does not bar it. We have carefully read and considered the numerous cases cited by plaintiff, but none of them conflict with what we have said. They are in point on the construction of the contract contended for by the plaintiff in error, but as we do not agree that this is the proper construction, they have no application to the instant case.

The next assignment of error is that the court erred in entering a personal judgment against O. B. Kee. This, in our opinion, is well taken. Under the facts found by the court, O. B. Kee was not a party to the contract between his brother, A. F. Kee and Satterfield, although he took with notice of it. This is not sufficient to render him personally liable. In 39 Cyc. 1877, it is said:

"The right of a personal decree applies only where the defendant is personally liable for the debt, and does not extend to one who was not a party to the contract of purchase."

This statement of law is well supported by authority.

Form 22

In *Wilson v. Lyon,* 51 Ill. 530, it is held that where there is a right to enforce a vendor's lien against the defendant on the ground that he had notice that the purchase money was not paid, the decree should be *in rem* and not *in personam.*

The question is raised by the brief of the plaintiff in error that the court erred in giving the defendant in error a vendor's lien on the portion of the property remaining unsold in the hands of O. B. Kee. No objection was made to this part of the judgment in the motion for a new trial, nor is any error assigned on this point, unless the tenth assignment "that the court erred in rendering its judgment" can be construed to attack this part of the judgment. We do not think that it can, but in any event we think the judgment is supported by *Rhodes v. Arthur,* 19 Okla. 520, 92 Pac. 244.

We, therefore, recommend that the judgment be modified by eliminating therefrom the personal judgment against O. B. Kee, and, as thus modified, that it be affirmed.

By the Court: It is so ordered.