## SIEGENTHALER v. NEWTON et al.

No. 22887.  Oct. 15, 1935.

Shirk, Danner & Phelps, Charles E. Earnheart, Samuel O. Neff, Howard Davis, and Elizabeth Cox, for plaintiff in error.

Everest, McKenzie, Halley & Gibbens, for defendants in error.

PER CURIAM. The defendants in error, hereafter referred to as plaintiffs, recovered a judgment against the plaintiff in error, hereafter referred to as defendant, adjudging and decreeing a 25-foot strip of ground along the east line of the north half of the northwest quarter of the northwest quarter of section 34, township 12 north, range 4 west, in Oklahoma county, Okla., to be a public street or highway, and enjoining the plaintiff in error from obstructing the use thereof as such, from which the latter appeals. The following questions are involved in the appeal: (1) Was there a sufficient statutory dedication of said strip of ground to constitute same a public street or highway? (2) If there were not such statutory dedication, was there sufficient common-law dedication thereof to constitute said strip of ground a public street or highway? (3) If there were not either a sufficient statutory or common-law dedication of said strip of ground to constitute same a public street or highway, did the plaintiffs, under the facts, have an implied roadway easement over same? (4) If said strip of ground became a· public street or highway, either by statutory or common-law dedication, or if the plaintiffs had a roadway easement over the same, had said strip ceased to be a public street or highway, or had such easement been lost by abandonment, misuser, or nonuser? (5) Did the obstructions on said strip of ground result in special injury to the plaintiffs, distinct from that suffered by the general public, so as to entitle them to maintain this action? (6) Did the trial court err in refusing to vacate said strip of ground as a public street or highway upon the defendant's cross-petition therefor? After stating the facts, we will dispose of said questions in the order enumerated.

Junie Spain and J. M. Spain, husband and wife, were the owners of the northwest quarter of the northwest quarter of section 34, township 12 north, range 4 west, in Oklahoma county, Okla. On the 8th of October, 1909, they filed for record and caused to be recorded in the office of the register of deeds of Oklahoma county, an instrument, dated the 14th day of September, 1909, and acknowledged before a notary public, which recited that they had caused the north half of the aforesaid 40 acres to be subdivided into "blocks and streets," as shown on an annexed map or plat, which 20 acres they designated and named, "Spain's Crystal Springs Addition," and that they dedicated "the streets as shown on said map or plat to the public." Following the aforesaid acknowledgment was a certificate of Warren E. Moore, dated September 14, 1909, and acknowledged before a notary public, reciting that he was a civil engineer, that at the instance of the Spains he had made the above-described subdivision, and that the annexed map or plat was a correct representation thereof. The aforesaid annexed map or plat was entitled: "Spain's Crystal Springs Addition, being a subdivision of the N.½ of the N.W.¼ of the N.W.¼ of sec. 34, T. 12 N., R. 4 W." Said map or plat shows the northwest corner of said subdivision to be the northwest corner of said section 34. The south line of said 20 acres is indicated by a solid black line, while the east, west, and north lines thereof are indicated by dashes and dots. Said subdivision shows four adjoining rectangular blocks, each enclosed in solid black lines, and, going from east to west, said blocks are designated by the figures 1, 2, 3, and 4. The south lines of said blocks are a part of the south line of the aforesaid 20 acres. Each of these blocks is 317.1 feet wide, that is, from east to west, and 630.6 feet long, that is, from north to south. Along the north side of said 20 acres and immediately north of the north lines of the aforesaid four blocks and extending the full length of said 20 acres, is a strip of ground 33 feet wide, which, of course, is one-half of a section line road. Likewise, along the west side of said 20 acres and immediately west of the west line of block 4 is a strip of ground 33 feet wide, which, of course, is one-half of a section line road. Along the east side of said 20 acres and immediately east of the east line of block 1 is a strip of ground 25 feet wide. This is the strip of ground in controversy. The aforesaid strips of ground along the north, east and west sides of said 20 acres are not named, merely the dimensions thereof being given.

The record fails to disclose the exact location of the above addition with respect to Oklahoma City, or whether same is contiguous or noncontiguous thereto. The defendant, in his brief, repeatedly asserts that said addition is outside of Oklahoma City, and at one place states that the same is noncontiguous thereto. Both parties,

in their briefs, assert that the strip of ground along the north side of said addition is a part of an extension of Tenth street, one of the streets of Oklahoma City; however, practically all the witnesses who testified stated that the north end of the strip of ground in controversy opened into said Tenth street. There is a residence upon block 1, erected some time between March 25, 1910, and October 13, 1922, but whether there are any improvements upon the other blocks of said addition was not shown,

On March 25, 1910, the Spains, by warranty deed, conveyed to Jessie Harrah blocks 1 and 2 of the above addition, and, by mesne conveyances, the defendant became the owner of block 1 on October 13, 1922, and of block 2 on July 27, 1923, since which respective dates he has been in the possession thereof. All the conveyances in the defendant's chain of title were made with reference to the above map or plat. On April 4, 1917, the Spains, by warranty deed, conveyed the south half of the northwest quarter of the northwest quarter of section 34, township 12 north, range 4 west, Oklahoma county, Okla., to Mamie E. Green, and the plaintiff, Henry A. Newton, by mesne conveyances, acquired title thereto on February 14, 1920, since which date he has been in the possession thereof. What disposition, if any, the Spains have made of blocks 3 and 4 is not shown.

The residence of plaintiffs is located south of the above block 4 and near the south-west corner of the 20 acres owned by them. There are no improvements on the east ten acres of said 20 acres, but there is a pond or lake thereon. In going to and from the plaintiffs' residence they traveled the section line road along the west side of their 20 acres, which road extends along the west side of said addition and intersects the section line road running east and west along the north side thereof, and which, as before stated, was referred to by the witnesses as Tenth street.

Prior to the date of the defendant's purchase of block 1, on October 13, 1922, the strip of ground in controversy was fenced along the south, east and west sides thereof, and there was a wire gate, consisting of three strands of wire, at the north end. Some of the witnesses testified that prior to said date said north end was open, and that there was a gate at the south end thereof. There is evidence that said strip of ground was in plain view from the road extending along the north side of the above addition, and that there was evidence of travel over the same. A number of the witnesses testified to having traveled over the full length of said strip of ground in going either to the residence of the Spains, when they lived on the 20 acres now owned by the plaintiffs, or to the pond or lake on the east ten acres of said 20 acres. The environments of said strip of ground are and have been such that little travel over the same would be expected. Prior to the date of defendant's purchase of the said block 1, and for some time thereafter, in getting to the residence on said block, the occupants thereof came through the gate at the north end of said strip of ground, proceeded down same on an angle for about 25 feet, and then entered said block. Subsequently, the north end of said strip of ground was closed by a fence, and since said time the defendant, or his tenant, has used the same for farming or gardening, or other purposes. At the time of the trial of the case there was a barn, two sheds and an outhouse located wholly on, or which extended into, said strip of ground. The south line of the aforesaid barn was connected with the wire fence, which extended eight or ten feet to the fence on the east side of said strip of ground, and there was a wire fence which commenced about the middle of the south side of said barn, extended south 25 or 30 feet, where it connected with a wire fence that extended from that point to the east line of said strip of ground, thus forming a small corral, which had an entrance into the aforesaid barn. Just when these obstructions were placed on said strip of ground is not shown, but they, or some of them, had probably been there eight or more years prior to the commencement of this action. There were also a number of trees on said strip of ground, but their exact locations, or whether they were set out or merely came up, were not shown. There is no evidence that subsequent to September 14, 1909, when said addition was platted, and prior to October 13, 1922, anyone claimed said strip of ground adversely, or did not regard the same as a street or highway. Since about October 13, 1922, no one had used said strip of ground as a highway. The defendant testified that when he purchased block 1 on October 13, 1922, he knew said strip of ground was platted as a street, and that he purchased said block according to the above plat.

Was there a sufficient statutory dedication of the strip of ground in question to constitute same a public street or highway? The defendant contends there was not because: (1) The same was not designated

by any name; (2) on the above map or plat the south end of said strip of ground is a solid black line, thus indicating that the same was to remain closed; and, (3) there was never any acceptance by the public authorities of said strip of ground as a street or highway. Our conclusion, after a careful consideration of said contentions, is that there was a sufficient statutory dedication of said strip of ground to constitute the same a public street or highway.

Dedications are classified as common law and statutory. A statutory dedication is one made under a statute, and is necessarily express, while a common-law dedication may be either express or implied, and is in the nature of a grant and prescription, operates by way of estoppel, and is generally predicated upon an estoppel in pais. A dedication insufficient under the statute may be sufficient to constitute a common-law dedication. A common-law dedication is generally just as efficacious as a statutory dedication, but the things required to constitute the two forms of dedication are different in certain particulars. McQuillin, Municipal Corporations (2d Ed.) sec. 1864; and Key v. Satterfield, 46 Okla. 660, 149 P. 243.

While the defendant repeatedly insists that the rule applicable to urban property is different from that applied to property such as is involved herein, both parties assume that the provisions of article 7, chapter 33, Okla. Stats. 1931, relating to the surveying and platting of property and the dedication of streets, highways, etc., are applicable, and we will, therefore, do likewise. Sections 6137, 6138, 6140, and 6141 of said Statutes, being parts of said article 7, chapter 33, provide:

"When any person wishes to lay out a town in this state or an addition or subdivision of out-lots, such person shall cause the same to be surveyed and a plat thereof made which shall particularly describe and set forth all the streets, alleys, commons or public grounds and all in and out-lots or fractional lots within or adjoining said town, giving the names, width, courses, boundaries and extent of all such streets and alleys.

"All the in-lots intended for sale shall be numbered in progressive numbers or by squares in which they are situated, and their precise length and width shall be stated on said map or plat; and out-lots shall in like manner be surveyed and numbered and their precise length and width stated on the plat or map, together with any streets, alleys or roads which shall divide or border the same.

"The plat or map after having been completed shall be certified by the surveyor and the officers; and every person or persons whose duty it shall be to comply with the foregoing requisitions shall at or before the time of offering said plat or map for record acknowledge the same before some person authorized to take acknowledgment of deeds. A certificate of such acknowledgment shall by the officer taking the same be indorsed on the plat or map, which certificate of the survey and acknowledgment shall also be recorded and form a part of the record.

"When the plat or map shall have been made out and certified, acknowledged and recorded as required by this article, every donation or grant to the public, or any individual or individuals, religious society or societies, or to any corporation or body politic, marked or noted as such on said plat or map, shall be deemed in law and equity a sufficient conveyance to vest the fee-simple of all such parcel or parcels of land as are therein expressed, and shall be considered to all intents and purposes a general warranty against such donor or donors, their heirs or representatives, to said donee or donees, grantee or grantees, for his, her or their use for the uses and purposes therein named, expressed and intended, and no other use and purpose whatever; and the land intended to be used for the streets, alleys, ways, commons or other public uses in any town or city or addition thereto shall be held in the corporate name thereof in trust to and for the use and purposes set forth and expressed or intended."

The only particular in which it can be said that the dedication involved herein fails to comply with the above-quoted statutes is that it and the map or plat annexed thereto failed to give any name to the strip of ground in controversy. The same thing is true of the strip of ground extending along the north side of said addition, and also the one extending along the west side thereof. However, it is quite clear from said dedication and map and plat, that said strips of ground were intended to be public highways. As has heretofore been pointed out, said dedication recites that the dedicators had caused the property to be subdivided into "blocks and streets," that the annexed map or plat was "a correct representation of said land as subdivided," and that they dedicated "the streets," shown on said map or plat, "to the public." To what "streets" did they refer? Undoubtedly, they had in mind the three aforesaid strips

of ground, including the one in controversy. Otherwise, said reference to "streets" is inexplicable. Substantial compliance with the above statutes is all that is required, and a failure to name a strip of ground set aside as a public street or highway will not invalidate the dedication. The important thing is the intention of the dedicator, and if that can be ascertained from the dedication, the statutes have been satisfied. Minton et al. v. Smith, 102 Okla. 79, 227 P. 75; Town of Hooker v. Morris, 92 Okla. 194, 218 P. 869; Key v. Satterfield, 46 Okla. 660, 149 P. 243; Atlas Lumber Co. v. Quirk (S. D.) 135 N. W. 172; Moragne v. City of Gadsden (Ala.) 54 So. 518; East Birmingham Realty Co. v. Birmingham Machine & Foundry Co. (Ala.) 49 So. 448; Arnold v. Weiker (Kan.) 40 P. 901; City of Los Angeles v. McCollum (Cal.) 103 P. 914; Oregon City v. Oregon & C. R. Co. (Ore.) 74 P. 924; and Village of North Chillicothe v. Burr (Ill.) 57 N. E. 32.

It will be noted that the strip of ground in question ends at the north boundary of the south half of the northwest quarter of the northwest quarter of section 34, thus constituting said strip of ground a cul-de-sac; however, it is well established that a road or street which is a mere cul-de-sac may be dedicated to the public use the same as any other thoroughfare. Cemetery Ass'n v. Meninger, 14 Kan. 312; Masters v. McHolland, 12 Kan. 17; and 18 C. J. 48, with the numerous authorities there cited.

The fact that on the above map or plat across the south end of the strip of ground in controversy there is a solid black line is no indication that said strip of ground was to remain closed at said south end, particularly when we remember that the Spains at the date of the dedication thereof owned the 20 acres which is now owned by the plaintiffs. The argument of the defendant upon this point is highly technical and unconvincing. The same point could be made with equal force with respect to the south end of the strip of ground along the west side of block 4 of the addition involved herein, but we have seen that said strip of ground is in fact one-half, the east half, of the section line road along the west side of the northwest quarter of the northwest quarter of section 34, and, therefore, said strip of ground was not closed at the south end thereof, notwithstanding said end is indicated by a solid black line.

The defendant argues at considerable length that, before there could be a dedication of the strip of ground in controversy as a public street or highway, it was necessary that the same be affirmatively accepted, either by words or acts, by the public authorities, but this contention is foreclosed by the decision of this court in the case of Revard v. Hunt, 29 Okla. 835, 119 P. 589, in which it was held:

"When lots are sold with reference to a recorded plat, a dedication of the streets and alleys as laid out in such plat is deemed perfect without any affirmative official or other action on the part of the municipality or public."

The opinion in the foregoing case was written by Justice Dunn, and it cites numerous authorities in support of the above rule. In the body of said opinion it is said:

"No official affirmative action on the part of the city was necessary as the right vested in the public by some of its members purchasing lots in accordance with the plat."

In Kingfisher Improvement Co. v. City of Waurika et al., 96 Okla. 83, 220 P. 919, it was held:

"The plaintiff corporation owned the lot in front of which the defendant city sought to have constructed a sidewalk under authority of article 13 of chapter 29, O. O. S. 1921, which fronted on Meridian street. It had theretofore owned many other lots near it and fronting on same street, which had been sold by plaintiff corporation to divers persons, and described 'according to the recorded plat thereof,' which showed the street fronting the lot in question. Held, such conveyances were tantamount to a dedication of the street to the public whether accepted or not."

Whatever may be the rule in other jurisdictions, we are forced to conclude that there was a perfect statutory dedication of the strip of ground in controversy as a public street or highway. The case of Town of Hooker v. Morris, supra, does not conflict with this conclusion.

In view of the foregoing, it is unnecessary for us to decide whether there was a common-law dedication of the strip of ground involved herein as a public street or highway, or whether the plaintiffs, under the facts, have an implied roadway easement over said strip of ground.

The question as to whether the above strip of ground ceased to be a public street or highway by abandonment, misuser, or nonuser is also foreclosed by the decision of this court in the case of Revard v. Hunt, supra. In that case the defendant, by fences and gates, had obstructed certain streets and alleys for more than ten years, and he contended that he had thereby ob-

tained the right by prescription of maintaining the same, and that the plaintiff's cause of action was barred by laches and long delay in bringing the same, as well as by the statute of limitations. It was held, however:

"Where a party is specially injured by a public nuisance, and brings an action to abate the same, no lapse of time will either legalize the same, nor estop the injured party from bringing an action to effect its abatement."

The theory of the above holding was that the obstruction of a public highway is a public nuisance, that no lapse of time will legalize the same as against the public, and that where an individual, by reason of special injury, is able to maintain an action to abate such nuisance, he enjoys "the exalted plane occupied by the state or municipalities in their action in such cases." The court's conclusion was reached after "much research and full consideration," and numerous authorities are cited in support thereof.

Section 11495, Okla. Stats. 1931, provides:

"No lapse of time can legalize a public nuisance amounting to an actual obstruction of public right."

The fourth paragraph of the syllabus to Foote et al. v. Town of Watonga, 37 Okla. 43, 130 P. 597, reads as follows:

"The generally accepted doctrine is that the maxim, 'Nullum tempus occurrit regi,' is not restricted in its application to sovereign states or governments, but that its application extends to and includes public rights of all kinds, and that it applies to municipal corporations as trustees of the rights of the public, and protects from invasion and encroachment the property of the municipality which is held for and devoted to public use, no matter how lax the municipal authorities may have been in asserting the rights of the public."

We quoted above section 6141, Okla. Stats. 1931, and it will be seen therefrom that the dedication of a highway to the public vests in it the fee-simple title thereto. Marland v. Gillespie, 168 Okla. 376, 33 P. (2d) 207. That seems to be the general rule as to the effect of a statutory dedication. McQuillin on Municipal Corporations (2d Ed.) vol. 4, section 1726. While certain provisions of article 7, chapter 33, Okla. Stats. 1931, provide for the vacation, under certain conditions, of recorded plats, both in whole and in part, section 6151 of said Statutes, being one of the provisions of said article 7, chapter 33, provides in part:

"That nothing contained in this article shall authorize the closing or obstructing of any public highways laid out according to law."

Our conclusion upon the instant question is also in line with the holding of this court in the case of City of Tulsa v. Aaronson, 103 Okla. 159, 229 P. 596, in which it was held:

"Where an owner of outlying property plats it as an addition to a city and files his dedication of the streets and alleys, including a park, in the office of the county clerk as required by section 4473, Comp. Stats. 1921, such dedication conveys and warrants the entire title of the dedicator. Thereafter the only way in which title to any portion of the streets, alleys, or public grounds shown in such dedication may be revested in the dedicator is by proceeding in the district court under sections 4481-83, Comp. Stats. 1921."

Do the obstructions in the strip of ground involved herein result in special injury to the plaintiffs, distinct from that suffered by the general public, so as to entitle them to maintain this action? While the plaintiffs have briefed this question, the defendant makes no reference thereto. The decision of this question involves consideration of three important facts: (1) That so long as the obstructions in the aforesaid strip of ground remain, one way of ingress to and egress from plaintiffs' premises will be cut off; (2) that there is a section line along the west side of plaintiffs' property which affords them another, better and more convenient way of ingress and egress; and (3) that the plaintiffs alleged and offered proof to the effect that they had a sale of the east ten acres of their property, but that the buyer refused to purchase, unless he had the right to use said strip of ground as a highway leading into the one extending along the north side of the defendant's property. Under these facts, we have concluded that the plaintiffs are entitled to maintain this action.

Section 11498, Okla. Stats. 1931, provides that a private person may maintain an action to abate a public nuisance if it is specially injurious to himself, but not otherwise. This is the general rule, both by statute and under the common law.

In the case of McKay v. City of Enid et al., 26 Okla. 275, 109 P. 520, Mr. Justice Hayes classified the circumstances in which the obstructions of a public highway would be considered as specially injurious to a private landowner as follows: (1) Where the obstruction is in front of the abutting

owner's property and interferes with his ingress or egress to and from his property; (2) where the obstruction, although not in front of the owner's property, is in such proximity to it, upon the highway upon which his property abuts, that the use and enjoyment of his property is destroyed or greatly interfered with, and its value depreciated; and (3) where the ingress and egress to and from the owner's property has been interfered with by an obstruction not in the highway upon which such property abuts, but in a highway which is the only means of ingress and egress to and from the owner's property. The case at bar falls within both the first and second of said classifications.

Where a highway affords an abutting landowner a way of ingress and egress to and from his property, he may maintain an action to enjoin any obstruction in such highway where the same cuts off or · materially affects his said way of ingress or egress, notwithstanding he has, by virtue of another highway abutting his property, another equally good or better way of ingress or egress. The right of a citizen to pass over a public highway, even though it be one upon which his property abuts, is an entirely different thing from his use of a highway upon which his property abuts as a means of ingress and egress to and from his property. The former is a right of the general public, but the latter is a right peculiar to the property owner, which he may protect by either an action for injunction or for damages. Therefore, inasmuch as the strip of ground involved herein affords the plaintiffs a way of ingress and egress to and from their property, the same gives them a special interest in said strip of ground, which justifies them in maintaining an action to remove any obstructions so placed in and upon said strip of ground as to cut off their said ingress and egress to and from said property, although they have, by virtue of the highway along the west side of their property, an equally good or better way of ingress and egress to and from the same. And the circumstance of the plaintiffs having an opportunity to sell the east ten acres of their property, conditioned upon the purchaser's right to use the aforesaid strip of ground as a highway leading to and from said ten acres, is an added reason why the obstruction of said strip of ground results in special injury to the plaintiffs, distinct from that suffered by the general public.

While the case of McKay v. City of Enid et al., supra, announces the law applicable to the case at bar, said case is distinguishable on the ground that there the plaintiff's ingress and egress was not cut off or materially impaired. The case of Mackey v. Aycock et al., 83 Okla. 175, 201 P. 365, is more in point on the facts. In the latter case the court held:

"The owner of land abutting upon a public highway one end of which is obstructed in front of his premises so that he cannot have free egress and ingress over it to and from his land suffers a special injury which entitles him to maintain an action to enjoin such public nuisance."

Neither of the parties hereto has cited the case of Scrutchfield v. Choctaw, O. & W. R. Co., 18 Okla. 308, 88 P. 1048, 9 L. R. A. (N. S.) 496, or Foster Lumber Co. v. Arkansas Valley & Western Railway Co., 20 Okla. 583, 95 P. 224, 100 P. 1110, 30 L. R. A. (N. S.) 231, but it is our opinion that the law announced in said cases is decisive of instant question. In the former case we held:

"The location and operation of a railroad upon a public highway may occasion incidental inconvenience and injury to an abutting land-owner, but until it cuts off or materially interrupts his means of access to his property, or imposes some additional burthen on his soil, his injury is the same in kind as that suffered by the community in general, and he cannot recover in an action therefor."

In the Foster Lumber Co. Case, supra, the court, speaking through Mr. Justice Hayes, said:

"Plaintiff has, by virtue of its ownership of said lots, an interest in street A on which said lots abut, and a right therein common with the public to pass over the same as a public highway. In addition thereto, it has a special right in said street, not common to the public, to wit, the right of ingress and egress over the same, to and from its lots. * * * (Emphasis ours.)

"Plaintiff in the case at bar, by virtue of its ownership of said lots, had the right of access over A street to the same. Such right is one peculiar to itself, in which the general public has no interest, and exists in the nature of an incorporeal hereditament attached to said lots, and is a valuable property right,—one that, under some circumstances, may constitute the greater element of value of the abutting property, and is one that cannot be taken away or materially impaired without compensation. Elliott, Railroads, 1085. * * *

"It is suggested by defendant in error that the lumber company has a means of access to its property over Seventh street,

adjoining its property on the south. The decisions of the courts upon the right of the abutting property owner to recover where his access is obstructed on one street, but where he has a means of access from another street, are not uniform. Some courts have held both ways upon this proposition. In the case of Kansas, N. & D. R. Co. v. Cuykendall, 42 Kan. 234, 16 Am. St. Rep. 479, 21 P. 1051, the Supreme Court of Kansas held that where the abutting property owner's ingress and egress was obstructed on one street, but he had a means of access from another street, there was no right of recovery. In this opinion all the justices concurred. In the case of Ft. Scott, W. & W. R. Co. v. Fox, supra, the same court held, all the justices concurring, that an abutting property owner is entitled to recover his damages for the permanent appropriation of the street in front of his property, although it is accessible from another street. We can see no reason that will justify the taking of one's special property right in one street because he may have a special property right in another street. If the plaintiff's property in this case is situated upon a corner of the block and therefore adjacent to two streets, he has a right of ingress and egress to and from said property over both streets; and he who obstructs this access from one street, and deprives the owner of the property of such property right, cannot relieve himself of liability by pleading that the owner of the property may reach his property from another direction. The accessibility of one's property may in some instances constitute a great part of its value, and to permit a material impairment of his access would result in the destruction of a great part of the value of his property, and his property is therefore as effectually taken as if a physical invasion was made thereon and a physical injury done thereto."

The following are some additional authorities supporting our conclusion upon the instant question: City of Shawnee et al. v. Robbins Bros. Tire Co. et al., 134 Okla. 142, 272 P. 457; American Steel, etc., Co. v. Wire Drawers', etc., Unions Nos. 1 and 3, 90 Fed. 608; Martin v. Marks, 154 Ind. 549, 57 N. E. 249; Strunk v. Pritchett, 27 Ind. App. 582, 61 N. E. 973; Pillings v. Pottawatomie County, 188 Iowa, 567, 176 N. W. 314; Ruthstrom v. Peterson, 72 Kan. 679, 83 P. 825; Finegan v. Eckerson, 26 Misc. 574, 57 N. Y. S. 605; and Dyche v. Weichselbaum, 9 Kan. App. 360, 58 P. 126.

The defendant's final contention is that the trial court erred in refusing to vacate the strip of ground in controversy, upon its cross-petition therefor. This cross-petition seems to have been filed under the authority of sections 6147, 6148, and 6149, Okla. Stats. 1931, which provide that the district courts shall have power to alter or vacate a plat of land, either in whole or part, and the procedure therefor. Without deciding whether these statutory provisions can be taken advantage of by and through a cross-petition in an action such as the one at bar, as distinguished from an original proceeding, it is sufficient to say that the notice required by said statutes was not given by the defendant, and at no time did the defendant ask for any continuance for the purpose of giving such notice. Neither the owner of block 3 nor of block 4 of the addition involved herein was a party hereto. Furthermore, the granting or denial of such a petition is within the "sound discretion of the court." Addressing ourselves to this question, we said in the case of Oklahoma City v. Kelsey, 160 Okla. 48, 15 P. (2d) 816:

"* * * This is a matter addressed to the sound discretion of the court. It had all the witnesses before it, heard their testimony, and observed their demeanor on the witness stand. The trial court, after hearing this evidence, found generally in favor of applicant. We cannot say that this finding is against the clear weight of the evidence."

Therefore, we cannot say that the trial court erred in not granting the relief prayed for in defendant's cross-petition.

For the reasons above given, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys R. H. Wills, H. R. Williams, and A. E. Montgomery in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Wills and approved by Mr. Williams and Mr. Montgomery, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, BUSBY, WELCH, and CORN, JJ., concur.