254 P.2d 417

**LOWER PAYETTE DITCH CO. v.
SMITH et al.
No. 7841.**

Supreme Court of Idaho.
March 3, 1953.

Welker & Daniel, Payette, Hallock, Banta, Silven & Horton, Baker, Or., for respondent.

Donart & Donart, Weiser, C. Ben Martin and J. F. Martin, Boise, for appellants.

GIVENS, Justice.

The day of the initial setting of this case in this Court, December 10, 1952, respondent moved to dismiss the appeal because appellant W. J. Smith died November 12 and no substitution had been made.

No representative had then been appointed. The setting was, therefore, vacated and the cause continued—the only immediate exigency. Cambon Bros. v. Suthon, 148 La. 669, 87 So. 512. Upon the appointment, in regular course of administration, of an executor December 17, 1952, substitution was timely moved and allowed, the case reset and heard. The right of defense survived, Section 5–319, I.C.; Civils v. First Nat. Bank, 41 Idaho 690, 241 P. 1023; Shaw v. McDougall, 56 Idaho 697, 58 P.2d 463; Pierson v. Pierson, 63 Idaho 1, 115 P.2d 742. Therefore, there is no merit to respondent's motion and it is denied. Rule 6, S.Ct.1952.

For more than twenty years prior to 1945, a conceded public highway had extended from the southeast, north and westerly through the premises now owned by appellants. For a distance of half to three-fourths of a mile, respondent's canal capable of carrying 13,000 miner's inches of water with a 50-ft. right-of-way, paralleled, adjoined and abutted on this highway, with the headworks and intake thereof from an eastern branch or slough of the Payette River, within appellants' premises.

A bridge, called the Red bridge, of the above highway spanned this branch of the river immediately west and slightly north of respondent's headworks. Shortly prior to 1945 Highway Dist. #2 of Payette County, then encompassing this highway, to avoid the expense of keeping up the above bridge, which assertedly had greatly deteriorated and entailed too much expenditure to repair, rerouted the highway, with the acquiescence and consent of the then owner, along and on the west side of their (now appellants') premises and there is this entry in the minutes of the Board:

"Exhibit I.

"Minutes of a meeting of the Board of Commissioners of Highway District No. 2, Payette County, held in the office of the District at No. 114, North 8th Street, Payette, Idaho, at 1:30 P.M., Monday, March 5, 1945.

"All members present.

\* · \* \* \* \* \*

"The question of closing the Highway District Road running from the Kenward Ranch to the new connection going through the Payne place was thoroughly discussed after which it was moved by Mickelson and seconded by Walker that the road be closed from the Kenward Ranch to a point where the new connection is made. The chairman calling for a vote upon the motion resulted as follows: Yes—Blayden, Mickelson and Walker. Against—none, so the chairman declared the motion carried. The request of the city of Payette to have that portion of the District road running through the north half of section 26 and cutting the airport in two, be closed was thoroughly discussed, after which it was moved by Blayden and seconded by Walker that only that portion of the district road running through the North Half of Section 26 and separating the land owned by the City of

Payette be closed. The chairman calling for a vote upon the motion resulted as follows: Yes—Blayden, Walker and Mickelson. Against, none, so the chairman declared the motion carried.

"There being no further business the meeting adjourned.

Approved Correct
s/ O. L. Blayden Andrew Mickelson
Chairman Secretary"

Thereafter, the District, and upon the dissolution of the District, Payette County succeeding to the District's overlordship of the highway, discontinued maintenance or control of the highway adjacent to and abutting on respondent's canal bank and beyond, and placed a notice of such closing some mile or so south and east of respondent's headworks where the new highway left the old and outside of appellants' land.

Appellants apparently became dissatisfied with respondent's continued use of the old road, because others entered their premises. They first (1946) placed a gate across this northern entrance and placed a lock thereon (1947), giving respondent a key. Later (1949), contending respondent neglected to close and/or lock the gate, allowing others to enter and appellants' cattle to wander out, blocked the road with a fence, ostensibly permitting respondent to pass through appellants' premises from the west. Respondent thereby had to pass over the above-mentioned bridge to get to its headworks and along the canal north through appellants' land, culminating in respondent assertedly being restricted to foot travel and preventing, because of the defective bridge, ingress and egress of heavy machinery and equipment necessary to maintain the canal, etc.

Thereupon, in 1950, respondent brought this suit to enjoin appellants from thus blockading the old road at its northern entrance into and through appellants' land

Appellants' main contention is that the old highway, by the above order and discontinuance of maintenance and use, first by the Highway District and then the County and the public generally, was completely abandoned and thus reverted to appellants and they had the absolute right to close it and respondent could get to their canal through appellants' land from the west, necessitating however, crossing the above bridge.

Respondent countered with asserted failure to comply with the statutory requirements for abandonment, and sufficient use by the public and respondent, to bar abandonment. Respondent alleged its special situation and necessities as to the use of the road thus:

"That the Lower Payette Ditch Company has approximately 13,000 miner's inches of waters of the Payette River, and that it would be impossible to deliver the water to their stockholders unless they can control the flow of the water to their stockholders by means of the headgate;

"That by reason of said obstructions so placed, the plaintiff is deprived of the free unobstructed use and enjoyment of its property;

"That said highway is the only means of ingress and/or egress for the purpose of rebuilding, repairing and maintaining said headgates or flashboards;

"That the plaintiff is the owner of the ditch and banks thereto of the Lower Payette Ditch, which abuts the said highway for the entire length of the obstructed portion of said highway.

"That plaintiff's agents and employees have used said road as a public highway in passing to and from the headgates or flashboards continuously for the last twenty years and until said highway was obstructed, as aforedescribed."
and prayed that appellants be enjoined "from maintaining said obstruction to the *use* of said highway". (Emphasis ours.)

Appellants denied the above allegations.

On this feature the court found no abandonment; that the old highway at intermittent points intersects and abuts respondent's canal; that to patrol the banks of its canal it is necessary for respondent to have continuous use of the old road; that other means of ingress and egress are not as satisfactory, direct or convenient, and concluded the old road had not been legally abandoned and:

"III.

"That plaintiff has shown necessity and a special easement for ingress and egress to and from its premises for the regulation of irrigation water and proper care and maintenance of its ditch.

"IV.

"That the roadway from U. S. Highway No. 52 through defendants' property to plaintiff's point of diversion and headgate is not as direct nor as satisfactory to plaintiff's purposes and is a more circuitous route than said Birding island road, causing plaintiff to suffer a special injury different from that suffered by the general public, through said obstruction.

"V.

"That plaintiff is entitled to judgment and decree herein perpetually enjoining and restraining said defendants, their heirs, successors and assigns, agents, servants and employees and all persons acting by, under or through them or either of them from obstructing or from attempting to obstruct or from maintaining or attempting to maintain any obstruction upon or across said Birding Island road or any portion thereof, or from interfering with or impairing the rights of plaintiff, its agents, servants or employees in the use and enjoyment of said highway."

Except as to abandonment, the record amply, and virtually without conflict, supports the above findings.

The court entered a decree perpetually enjoining and restraining appellants from obstructing or interfering with the right of respondent, its agents, etc., in the use and

enjoyment of that certain highway known as the Birding Island road (the road in question).

It is unnecessary to determine whether the record justifies the conclusion, procedurally and substantively challenged by appellants, that there had not been an abandonment of the highway as a public road, because conceding it had been so abandoned, respondent was shown to have, and the court found had, as an abutting owner and user of the old road for over twenty years, the right to continue to use the old road. Permian Oil Co. v. Smith, Tex.Civ. App., 47 S.W.2d 500; Thomas v. Farrier 179 Okl. 263, 65 P.2d 526; Siegenthaler v. Newton, 174 Okl. 216, 50 P.2d 192; 25 Am. Jur. 423, § 127; 39 C.J.S., Highways, § 129, p. 1064; 150 A.L.R. 657. The above principle has been recognized and given force and effect in Continental Oil Co. v. City of Twin Falls, 49 Idaho 89 at page 107, 286 P. 353.

While respondent formerly had the same rights as the general traveling public to use the old road, the right acquired by it to use this road, because its property abuts thereon, was a right different from and independent of the right of the general traveling public. It existed and, therefore, persists regardless of appellants' consent and comprehends the manner and extent to which the road had theretofore necessarily and customarily been used by respondent.

The record as to the rerouting of this highway along the west side of now appellants' land, then owned by their predecessor in interest, Jim Payne, is silent as to any limitation, restriction or other agreement with him in connection with closing the old road and rerouting the new. Therefore, perforce we do not consider or decide what might then have been proposed or determined.

Appellants, in their answer, alleged that respondent's use of the old road since March 5, 1945, was permissive. The court made no finding on this issue. It was thus stipulated:

"That the plaintiff's agents and employees have used said road in going to and from their headgates and flash boards continuously for twenty years prior to March 5, 1945, and have used the same thereafter, except when prevented from so doing by the obstruction placed thereon by the defendant."

Appellants' conduct was more obstructive than permissive, culminating in complete negation of respondent's right to use the old road except through appellants' premises from the west over the Red bridge, questionably strong enough to support respondent's heavy machinery. The first obstruction placed by appellants at the north entrance of the old road into their premises was in 1946—less than five years before the bringing of this suit.

This state of the record does not justify or require that we consider that respondent's use of the road after 1946, when appellants first put a gate across the road and/or 1947, when they locked the gate, was only a permissive use for such a length of time as to destroy its rights as an abutting owner. Porter v. Huff, 162 Ark. 52, 257 S.W. 393; Mount v. Dillon, 200 Ark. 153, 138 S.W.2d 59. See McEneny v. Gerlach, Mo.App., 142 S.W.2d 1095 at page 1098.

 The old road extended entirely through appellants' premises with access, ingress and egress both at the north and south lines of appellants' land. Respondent has not indicated a desire to continue to use the road south of its headgate, thus from the south boundary of the Kenward place or north line of appellants' place south to respondent's headgate, the old road becomes in effect, a dead end. However, respondent by reason of its special acquired right, personal to it as an abutting owner, retains the right of access, ingress, egress and use of the old road from the north line of appellants' land along respondent's canal bank to its headgate, in the manner and to the same extent as its necessities required and as previously exercised prior to March 5, 1945. Howell v. King County, 16 Wash.2d 557, 134 P.2d 80 at page 82; Kirk v. Schultz, 63 Idaho 278, on rehearing 290, 119 P.2d 266.

The decree thus declaring and protecting respondent's right to use the old road is affirmed.

No costs allowed.

PORTER, C. J., and TAYLOR and THOMAS, JJ., concur.

KEETON, Justice (dissenting in part).

I am of the opinion that the road or right of way in question has been abandoned as a public highway, not only by affirmative action taken by the Board of Commissioners of Highway District No. 2, but by acts and conduct of the Board of County Commissioners, successors in interest, showing an actual intent to abandon the highway.

I am further of the opinion that the abolition of the right of way or road, as a public road, does not destroy the special interest shown by the respondent to use the old road here in controversy as a means of ingress and egress to its irrigation works and diversion points.

By Sec. 40-501, I.C., the Board of Highway Commissioners had the right to abandon or abolish the road in question as being unnecessary.

If the road is a public right of way, it is the duty of the Board of County Commissioners to work and maintain it. Sec. 40-501, I.C., Subd. 2. This at all times subsequent to 1944, after the abandoning order

was passed, the Commissioners refused to do.

The action of the Board could not, in my opinion, extinguish the special interest that respondent had to the use and enjoyment of the road in question to reach its headgates and diversion points. In other words, the respondent had the right of an abutting owner, which arose from its ownership of property contiguous to the highway, which right did not belong to the public generally. McQuigg v. Cullins, 56 Ohio St. 649, 47 N.E. 595; 39 C.J.S., Highways, § 129, p. 1064; Southern Ry. Co. v. Wages, 203 Ga. 502, 47 S.E.2d 501; Thomas v. Farrier, 179 Okl. 263, 65 P.2d 526; Siegenthaler v. Newton, 174 Okl. 216, 50 P.2d 192.

The only person or party shown to have any special interest, distinguishable from the public interest, in the road in question is respondent. From 1946 to 1949 respondent's right was exercised by entrance to the property through a locked gate, to which respondent's agents were given a key. This was the only use shown to be necessary. I therefore am of the opinion that the access to respondent's property by it, or its agents, would be through this gate and see no reason why the gate should not be maintained thus allowing respondent access to its land.

I therefore think the judgment should be modified to allow the respondent the same access to its property as was exercised subsequent to 1945 and including 1949.